KENNETH W. FLEISCHER, APPELLEE, v. LARRY BRODERS, APPELLANT, IMPLEADED WITH LEONARD T. FLEISCHER, APPELLEE.

135 N. W. 2d 5

Filed May 7, 1965. No. 35883.

Burbridge & Burbridge and G. F. Johnson, for appellant.

Cleo F. Robak, Henry F. Reimer, and Deutsch & Hagen, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

This is an action to foreclose a chattel mortgage note dated December 17, 1959, in the sum of $40,000 and on which it is alleged the sum of $37,746.96 is due.

On November 30, 1957, defendant Broders and Kenneth W. Fleischer and Leonard T. Fleischer, who will hereafter be referred to as Fleischers, entered into a partnership agreement for the operation of Fleischers' farm. Fleischers furnished the land and Broders agreed to furnish the labor, equipment, fuel, and oil to operate the ranch. They were to share equally the cost of livestock, feed, seed, and weed spray. Livestock and produce were to be kept on the premises and when sold, and after payment of expenses, the proceeds were to be divided, one-half to each. Both parties agree the partnership was dissolved May 1, 1962. Defendant Broders, by answer, alleges certain credits due him and asks for an accounting of the whole partnership period. There is no denial that the defendant Broders is indebted on the note and for a balance due from the partnership operation. The trial court, by its judgment, enforced the note and foreclosed the chattel mortgage. It found a gross balance due plaintiff in the sum of $35,260.22, allowed a credit of $2,787.80 for damages due to Fleischers buying some Bangs diseased cattle, leaving a balance due of $32,470.42 which, with interest to April 1, 1964, amounted to $35,758.02. At dissolution, partnership assets had been sold and the proceeds placed in escrow by

agreement. The trial court deducted from the judgment $20,716.27, defendant Broders' share of the escrow account, and rendered judgment for $15,041.75. Plaintiff was ordered to pay the outstanding bills in the amount of $3,142.66. Defendant Broders appeals.

The record in this case is a classic of confusion. The Fleischers were druggists at Columbus, Nebraska, and the defendant Broders was the tenant on the farm in Knox County. The operation involved hundreds of transactions. Both parties, especially the Fleischers, bought many items. Sales were made by both parties, proceeds were divided in some cases, and in many cases they were not divided. At the same time, Broders needed substantial financial backing in order to carry on his part of the partnership. No books were kept on the partnership as such during 1957 and 1958 or until April 1, 1959. At the trial, partial records were produced, some checks were produced by Broders, and basic original checks and records were missing. There is a dispute as to what happened to the original 1958 checks and records. It does appear that the Fleischers produced the original invoices, checks, and records from the beginning of 1959 on. Based on these records and on an examination of the 1958 work sheets made from the original records for income tax purposes for the Fleischers, exhibit 3 was prepared by a certified public accountant, named Greteman, covering the years of the partnership. This audit, exhibit 3, constitutes the only comprehensive, intelligible review of the transactions of the parties and the balancing of the credits between them. It has been used by both parties to this appeal as a basis for the credits and debits claimed. Although a portion of it is based on hearsay testimony as to the 1958 records, this testimony was received without objection and constitutes the best evidence available. Exhibit 3 was admitted in evidence and we conclude that this ruling was correct. An examination of the record reveals that, after hearing all of the conflicting evidence relating to the different items of

debit and credit, the district court accepted this audit, exhibit 3, as a basis for its judgment in this action. We have reviewed the evidence and have come to the conclusion that the trial court was substantially correct in accepting the Greteman audit, exhibit 3, as a basis for rendering judgment, except for the particular items later on discussed in this opinion.

This is a case where no books of account or intelligible records were kept by the parties. Records of sales and purchases were made haphazardly by the parties. No orderly procedure for crediting and debiting the various sales, purchases, and other items was ever followed or agreed on. The court is faced with the almost impossible task of harmonizing or reconciling the different sets of figures and trying to reconstruct the truth from the uncertain and confused nature of almost all of the testimony. However, we are aided by certain presumptions of law and conclusions of fact we come to from a review of the testimony.

Exhibits 8, 13, 14, and 15 were offered in evidence by the defendant Broders. They are annual settlement or accounting sheets for the years 1959, 1960, and 1961 (exhibits 14 and 15). According to their agreement, Kenneth Fleischer prepared these exhibits from his records. Annually, in December and January. the parties met and went over these records. Each party brought his own list of sales, purchases, and other records. Without dispute, these records were used by Broders for his income tax returns. There is no essential dispute as to what attitude or regard the parties had for their annual accounting records. They went over the exhibits and the items with Kenneth Fleischer, and Kenneth Fleischer testified they were approved. Broders' own testimony is to the effect that he was satisfied at the end of each year; that he was allowed all work credit; and that he never complained about the settlements shown in their annual accountings until after suit was filed.

After a review of the evidence, we conclude that, ex-

cept for a few items referred to in these exhibits as not being settled, these exhibits constituted annual settlements or accounts stated between the parties. Exhibit 8, the account for 1959, is the most important of these exhibits and forms the basis for this suit on the note and chattel mortgage for $40,000. Exhibit 8 lists in detail the advances for loans from Kenneth Fleischer. It states, "Larry owes K Fleischer to Dec 17-1959" and then states the total amount of the loans with interest, with credit for horse care, in the sum of $27,220.22. This is on the last sheet. The exhibit shows a separate accounting on the partnership or ranch account. It states, "Larry owes Ranch account Fleischer Bros." There are three pages of items showing sales, purchases, and various credits with a balance due Fleischer Brothers in the sum of $13,640.37, or a total with the loan account of $40,860.59. Different handwriting appears on this document at different places. Significant is this handwritten statement which Anna Broders, wife of defendant, does not deny writing. It is: "Lary been waiting for the checks to come through so could give you everything Just received one on Heines none on your Brotherlaw or Schinbinder so can't tell you the true Balance Course the Hay we owe you & money refund we still have coming from salesring-Bangs cows. been waiting to come up for 10 days but weather scares us out. been home with flu since Thursday nite." Further appears the following, "Balance probably is probably around 1100.00 more with 2 batches of corn you * * * up on corn we owe for."

There are further computations on this exhibit, one on which the different balances are added and a net balance due of $39,801.68.

Apparently, there was confusion as to the amount of credits as the parties did not have all of the checks cleared or the records before them. In any event, Broders gave Kenneth Fleischer his note for one year for $40,000 dated December 17, 1959, with interest at

4½ percent and 5 percent after maturity. No precise accuracy may be obtained, but as we see it, this $40,-000 note substantially settled the aggregate balance due both for money advances to Broders and the debits on the ranch account.

We go now to the 1960 settlement between the parties, exhibit 13. It was produced by Broders and is an operating statement of the ranch account. It was gone over by the parties in December 1960 or in January 1961. Exhibit 13 shows a balance on the operating account of the partnership on February 15, 1960, of $13,632.97 due Fleischers. This balance is approximately the same as the operating expense due on exhibit 8 and incorporated in the note of December 17, 1959. Exhibit 13 lists numerous items of debit and credit and shows a balance due at the end of the year 1960 on the partnership operating account of $14,767.49. On the last page of this exhibit, offered by Broders, the following appears:

"I owe                27220.22 Ken
                      14767 49 F Bros
                       1894 75 Int.
                      _____
Jan 1,1960            43882 46"

It is not denied or suggested otherwise than that this notation is in Broders' handwriting and offered as his own exhibit in the case. This exhibit substantially confirms the settlement figures of exhibit 8, which were incorporated in the note for $40,000. We conclude that these two exhibits constitute acknowledgment and affirmation, at a minimum, of the indebtedness confirmed by his execution of the note of December 17, 1959, in the sum of $40,000.

The 1961 settlement (exhibits 14 and 15) again reviewed the operating ranch account. It was produced by Broders again. Exhibit 15, which brings the account to date of January 18, 1962, shows a balance due on that date of $37,766.96 for which suit was brought. Before

we examine the evidence further, we pause to state the posture of this case at this point.

The attempt here is to reexamine, going back to the year 1958, a multitude of charges and credits that were either included or settled when these parties met and examined their annual accounts as shown in exhibits 8, 13, 14, and 15 for the years 1959, 1960, 1961, and part of 1962. This may not be done, in the absence of clear and convincing evidence of error or mutual mistake. In a somewhat similar recent case, Lortscher v. Winchell, *ante* p. 302, 133 N. W. 2d 448, this court said: "The district court refused to set aside or recompute any of the settlements which the parties had made, and held that the settlements were binding on both parties and conclusive as to all matters covered in the settlements. We think this determination was correct. In a similar case this court said: 'The parties agree that they met once a year, or thereabouts; that they had their accounts before them, and that debits and credits were demanded, given, and refused, resulting in the giving of a new note for the ascertained balance and the surrender of the old note. The law favors and encourages settlements, and in the absence of fraud, error, or mistake, they should not be set aside. The record conclusively shows a meeting of the parties, a presentation, examination and adjustment of their accounts, the making of new notes for the found balance and the surrender of the old ones. Such acts constitute settlements.' Stuart v. Torrey, 106 Neb. 608, 184 N. W. 215."

It is apparent that in December 1959 or January 1960, these parties settled their accounts as nearly as they could be. They executed a note covering the estimated balances. The only question this court must determine is the balance due under the applicable rules as to the burden of proof. The note "for value received" is evidence not only of a promise but constitutes prima facie evidence of consideration and the burden of showing payment is a matter of defense which the defendant

must affirmatively establish at trial. In re Estate of Hoagland, 126 Neb. 377, 253 N. W. 416; Farmers & Merchants State Bank v. Kuhn, 125 Neb. 457, 250 N. W. 652; Bosle v. Luebs, 169 Neb. 186, 98 N. W. 2d 795. That a party has a right to bring an action on a note by one partner for advance to another for the purpose of carrying his obligations under the partnership agreement and to further its interest is well established. Linch v. Linch, 145 Neb. 792, 18 N. W. 2d 98. Ordinarily recovery on said note may be had, without regard to the status of the partnership accounts, and ordinarily such action may not be turned into an equitable action for accounting by cross-petition. Linch v. Linch, *supra.*

We feel plaintiff has established his case by proof of the note and chattel mortgage. Generally he has substantially established the amounts due under the different settlement agreements hereinbefore set out, except for the items hereinafter referred to in this opinion. The Greteman audit, exhibit 3, offered by the plaintiff to establish more accurately the amount due, we feel, as the trial court did, should be accepted as the basis for the computation of the judgment, except as to errors hereafter pointed out. There is no dispute about the credit for damage to Broders from the purchase by Fleischers of some Bangs diseased cattle in the sum of $2,787.80 which leaves a balance due of $32,470.42 as of about January 1, 1962.

The Greteman audit, however, we think made some plain errors in the allowance of credits under the partnership agreement and which we think the defendant Broders has proven by clear and convincing evidence. Broders was charged in his unpaid bills with a debit of $700 for pasture rent. Fleischers have paid their half. The pasture rented was substituted for land described in the partnership contract. Fleischers were supposed to furnish the land, but Fleischers wanted their own land to lie idle. We deduct this as a credit to Broders. Broders baled hay for Fleischers' race horses,

not in the partnership agreement. He is entitled, under the evidence, to $150 credit for this.

There are many items, a discussion of which would unduly burden the opinion. We feel that Broders is entitled to credit for $175 for plowing done on land leased from the State Game Commission and not properly allocable to the partnership agreement. We reject Broders' claims of $1,500 in credits for taking care of the stock and labor during the dissolution. Under both the partnership agreement and the law, he was obligated to furnish these services in the termination of the partnership. He is not entitled to compensation for winding up the affairs of the firm. Efner v. Reynolds, 105 Neb. 646, 181 N. W. 552; 40 Am. Jur., Partnership, § 284, p. 325.

The trial court used exhibit 3, the Greteman audit, as a final basis for the adjustment between the parties. The defendant Broders contends three items of credit, half of the price of a bull sold on February 28, 1960, in the amount of $42.43; credit on hogs sold on July 1, 1960, in the sum of $833.14; and a $50 credit for cow sold, were not properly credited on exhibit 3, although credit was given when the parties settled their accounts in exhibit 13 for the year 1960. We find no answer to this contention by Fleischers. We think it is clear that a mistake was made here and an additional credit is allowed Broders for the year 1960 in the total sum of $925.57.

Broders claims that he should not be charged one-half of the expenses of fertilizer, aphid spray, and many items of veterinary supply and expense. We have reviewed the evidence and reject this contention. Under the terms of the agreement and the manner in which the parties construed it in their operations and the settlement of their accounts, we think these were part of the contemplated operating expenses and one-half should be chargeable to Broders.

Broders generally contends that he should not have

been charged interest in the accounts through the years. But, the parties executed a note, bearing interest, for the advances and their conduct and their settlements indicate an agreement to pay interest. Advances by a partner beyond the amount of capital he agreed to contribute bear interest. § 67-318 (c), R. R. S. 1943. See, also, 68 C. J. S., Partnership, § 84 c, pp. 523, 524. Interest was charged defendant Broders in the settlements of their account, and Broders admittedly made no complaint until after this action was commenced. However, the evidence clearly shows Kenneth Fleischer made certain advances prior to April 17, 1959, at which time Broders executed a note for $17,500 with interest at 4½ percent per annum. The parties apparently intended interest to run from that date. Broders is properly chargeable with interest on this note until it was merged in the note for $40,000 on December 17, 1959. He is charged $830.22 interest, the basis of which does not appear. We conclude that he should be charged interest only on the $17,500 note from April 17, 1959, to December 17, 1959. This results in an overcharge on interest of $234.56, which Broders should have credit for.

There are other items, too numerous to mention in this opinion, for which Broders claims credit. Broders has not demonstrated, by clear and convincing evidence, an error or mutual mistake as to these items, many of which, if not all, were in their settlement of accounts for the years, and which were carried over into the Greteman audit, exhibit 3, which the defendant Broders, in a large part, seems to accept and yet rejects it when he desires this court to go back and recompute the different items of account. As we have pointed out, this court will not do that unless it appears by clear and convincing evidence that an error or mutual mistake was made. We note that Fleischers in their brief make no answer to most of the items allowed as additional credits herein.

The trial court found a gross amount due of $35,260.22

on the note and mortgage. Deducting the additional credits herein allowed of $2,185.13 and allowing Broders the sum of $2,787.80 on his cross-petition about which there is no dispute on appeal, we find the net amount due as of January 1, 1962, of $30,287.29. The judgment is modified accordingly with directions to compute interest on $30,287.29 at the 4½ percent rate from January 1, 1962, to the date of entry of judgment on the mandate herein. The court used a 4½ percent interest rate on the note and there is no cross-appeal herein, although the note provides for payment of 5 percent after maturity. In the final judgment, credit should be further allowed Broders for his share of the money received from the sale of the partnership assets now in the escrow account which, at the time of the judgment in the lower court, was $20,716.27. Judgment should be entered for the balance and foreclosure of the chattel mortgage accordingly. The plaintiff is also ordered to pay the outstanding bills. The costs on this appeal are taxed one-half to Fleischers and one-half to defendant Broders.

The judgment is affirmed in part, and in part reversed and the cause remanded with directions to enter judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.