Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/14/2019 09:08 AM CDT

Brenda R. Rice, appellant, v. Terrance A. Poppe,
an individual, and Morrow, Poppe, Watermeier
& Lonowski, P.C., a limited liability
organization, appellees.

___ N.W.2d ___

Filed March 22, 2019.    No. S-18-701.

1. **Judgments: Appeal and Error.** In a bench trial of a law action, a trial
   court's factual findings have the effect of a jury verdict and will not be
   set aside on appeal unless clearly erroneous.
2. ____: ____. In reviewing a judgment awarded in a bench trial of a law
   action, an appellate court does not reweigh evidence, but considers the
   evidence in the light most favorable to the successful party and resolves
   evidentiary conflicts in favor of the successful party, who is entitled to
   every reasonable inference deducible from the evidence.
3. **Malpractice: Attorney and Client: Negligence: Proof: Proximate
   Cause: Damages.** To succeed in a legal malpractice claim, a plaintiff
   must ultimately prove three elements: (1) the attorney's employment, (2)
   the attorney's neglect of a reasonable duty, and (3) that such negligence
   resulted in and was the proximate cause of loss to the plaintiff.
4. **Malpractice: Attorney and Client.** A client cannot recover for mal-
   practice (1) when the client failed to follow the attorney's reasonable
   advice, (2) when the client directed the attorney's actions in a matter
   and the attorney acted in accordance with the client's instruction, and
   (3) when the client misrepresented material facts upon which the attor-
   ney relied.
5. **Malpractice: Negligence: Proximate Cause.** A plaintiff's contributory
   negligence is a defense in a malpractice action when it contributed to the
   professional's inability to meet the standard of care and was a proximate
   cause of the plaintiff's injury.
6. **Malpractice: Attorney and Client: Negligence: Proximate Cause.**
   A client's negligence in a legal malpractice case is sometimes more

relevant to negating the proximate causation element of the claim than to showing that the plaintiff's negligence was a contributing cause to the plaintiff's injury.

Appeal from the District Court for Lancaster County: James G. Kube, Judge. Affirmed.

James R. Welsh and Christopher Welsh, of Welsh & Welsh, P.C., L.L.O., for appellant.

Randall L. Goyette and Christopher M. Schmidt, of Baylor Evnen, L.L.P., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Terrance A. Poppe represented Brenda R. Rice (Rice) in her divorce from Dale Rice. Rice subsequently filed a malpractice action against Poppe. Poppe's motion for summary judgment was initially granted, but this court reversed.[1] A bench trial was held at which the district court found in Poppe's favor. Rice appeals.

## FACTUAL BACKGROUND

Rice and her husband, Dale, were divorced in 2011. Poppe represented Rice in the divorce, while Dale was unrepresented. Poppe testified that it is his practice, when he first meets with new clients, to ask them a series of questions about the marriage and the marital estate. Poppe testified that he would have asked Rice whether there was "'any life insurance with any cash surrender value or any life insurance that we need to deal with.'" Several sheets of notepaper, which Poppe testified

---

[1] *Rice v. Poppe*, 293 Neb. 467, 881 N.W.2d 162 (2016).

were his notes from this meeting, were offered into evidence. Life insurance was listed in those notes under a heading entitled "Assets." A "0" was next to that entry. Poppe testified that "[z]ero means [the client] told me no, there is no insurance with cash value or insurance that we need to deal with. . . . It means there is no life insurance with cash value or no life insurance that was an issue."

Poppe further testified that his questions are intended to discover policies even if they do not have cash value, as he needs to know about anything that "we need to be concerned with or deal with." Poppe testified that there was no doubt in his mind that he asked about life insurance at this initial meeting. According to Poppe, he and Rice met several times after the initial meeting and at no point did Rice mention anything about any life insurance policies.

Rice also testified about this meeting, indicating that she did not recall talking about life insurance at the initial meeting or subsequently. She further testified that she and Dale had a conversation about life insurance prior to the entry of the decree and that it was her intention to keep Dale as her beneficiary. Rice was not permitted to testify regarding Dale's intention as to his policy, but she did testify that it was her belief that they each "retained right to our policies. To me that meant we retained the right to keep our beneficiary as well. We could do whatever we want. . . . We were each other's beneficiary and nothing changed with that divorce decree, was our understanding — my understanding."

Based upon his discussion with Rice, Poppe prepared a draft property settlement agreement. According to Rice, she went "back and forth to [Poppe's] office several times" about the agreement, and she made several suggestions that were incorporated into the final agreement.

The decree was entered on August 8, 2011. As relevant, the decree included a property settlement agreement with the following provisions. Paragraph VI provided in part:

**STOCKS, BANK ACCOUNTS, LIFE INSURANCE POLICICES** [sic]**, PENSION PLANS AND RETIREMENT PLANS**

[Rice] shall be awarded all interest in all pension plans, stocks, retirement accounts, 401(k), IRA, life insurance policy and checking or savings account in [Rice's] name, free from any claim of [Dale]. [Dale] shall be awarded all interest in any pension plans, stocks, retirement accounts, 401(k), IRA, life insurance policy and checking or savings account in [Dale's] name, free from any claim of [Rice].

Paragraph IX provided:

**PROPERTY PROVISIONS AND SETTLEMENT OF PROPERTY RIGHTS OF PARTIES**

It is expressly understood by and between the parties hereto that the provisions of this agreement relating to the property and liabilities of each, set aside and allocate to each party his or her respective portions of the properties belonging to the parties and of the liabilities of the parties at the date hereto; and each party acknowledges that the properties set aside to him or her, less the liabilities so allocated to him or her, will be in full, complete and final settlement, release and discharge, as between themselves, of all rights, claims, interests and obligations of each party in and to the said properties and the same in their entirety constitute a full, fair and equitable division and the partition of their respective rights, claims and interests in and to the said properties of every kind and nature.

And, in relevant part, paragraph X provided:

**WAIVER AND RELEASE OF MARITAL RIGHTS**

. . . .

(b) In consideration of the provisions of this agreement, [Rice] waives and relinquishes any and all interest or rights of any kind, character, or nature whatsoever,

including but not limited to all rights to elective share, homestead allowance, exempt property, and family allowance in the property of [Dale], and renounces all benefits which would otherwise pass to [Rice] from [Dale] by intestate succession or by virtue of the provisions of any Will executed before this Settlement Agreement which she, as wife, or as widow, or otherwise, has had, now has, or might hereafter have against [Dale], or, in the event of his death, as an heir at law, surviving spouse, or otherwise. [Rice] also waives and relinquishes any and all interest, present and future, in any and all property, real, personal, or otherwise, now owned by [Dale] or hereafter acquired, and including all property set aside for him in this agreement, it being the intention of the parties that this agreement shall be a full, final, and complete settlement of all matters in dispute between the parties hereto.

Rice testified that Poppe did not go through the property settlement agreement with her prior to the hearing during which it was entered.

About a week after the divorce decree was entered, Dale died. Rice made a claim for the death benefits under life insurance policies owned by Dale. Dale's children from his first marriage challenged her right to the benefits. This court affirmed the district court's finding that Rice had waived her beneficiary interest in the policies by the property settlement agreement, and accordingly concluded that Rice was not entitled to the death benefits.[2]

Rice sued Poppe for legal malpractice, alleging that he did not advise her that the property settlement agreement waived her interest in Dale's life insurance policies. The district court granted Poppe's motion for summary judgment, but we reversed, concluding that Poppe had not established a

---

[2] *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

prima facie case for which he was entitled to judgment as a matter of law.[3]

Upon remand, a bench trial was held. Rice and Poppe testified as to the factual background of the case. Each also called an expert. Rice offered the deposition of Lyle J. Koenig, who testified that Poppe did not meet the applicable standard of care when he included the "boilerplate" language regarding life insurance, when it was his belief that there was no life insurance in the marital estate. Poppe offered the testimony of John Ballew, who testified to the contrary; it was his opinion that Poppe had complied with the applicable standard of care in his representation of Rice.

The district court found in favor of Poppe. Rice appealed.

## ASSIGNMENTS OF ERROR

Rice assigns, renumbered, that the district court erred in (1) holding that Rice's failure to provide information about the life insurance policies and their beneficiary designations to Poppe was a misrepresentation that broke the causal chain of the legal malpractice claim and (2) finding that Rice's expert testified that Poppe failed to meet the applicable standard of care only by failing to explain the effect of the inclusion of life insurance in paragraph VI of the decree, and not by failing to explain the effect of the waiver and relinquishment language in paragraphs IX and X(b).

## STANDARD OF REVIEW

[1,2] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous.[4] In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence

---

[3] See *Rice v. Poppe, supra* note 1.

[4] *Home Pride Foods v. Johnson*, 262 Neb. 701, 634 N.W.2d 774 (2001).

in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[5]

## ANALYSIS

[3] To succeed in a legal malpractice claim, a plaintiff must ultimately prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.[6]

Rice first assigns that the district court erred in concluding that her failure to provide Poppe with information regarding her and Dale's life insurance policies broke the causal chain and prevented her from sustaining her burden for legal malpractice. The district court relied on *Balames v. Ginn*[7] to support its conclusion.

[4] In *Balames*, we discussed the "role that a client's negligence or contributory negligence plays in a legal malpractice case."[8] We have held that a client cannot recover for malpractice (1) when the client failed to follow the attorney's reasonable advice, (2) when the client directed the attorney's actions in a matter and the attorney acted in accordance with the client's instruction, and (3) when the client mispresented material facts upon which the attorney relied.[9]

[5,6] But in *Balames*, we added to this list, noting that "a plaintiff's contributory negligence is a defense in a malpractice action when it contributed to the professional's inability to meet the standard of care and was a proximate cause of the

---

[5] *Mays v. Midnight Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[6] *Rice v. Poppe, supra* note 1.

[7] *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

[8] *Id*. at 694, 861 N.W.2d at 695.

[9] *Balamas v. Ginn, supra* note 7.

plaintiff's injury."[10] And, relying on a legal malpractice treatise, we further noted that "[f]requently, a client's negligence in a legal malpractice case is more relevant to negating the proximate causation element of the claim than to showing that the plaintiff's negligence was a contributing cause to the plaintiff's injury."[11]

When the record is considered in this light, there was sufficient evidence presented at trial to support the district court's finding. Rice testified that Poppe did not ask about life insurance; Poppe testified that he did. In addition, Poppe offered notes of his first meeting with Rice, indicating that he inquired about life insurance. The district court's finding as to this issue effectively negates Rice's claim as to causation—the property settlement agreement in the decree waived Rice's right to Dale's life insurance, because she did not inform Poppe about that life insurance so that he could properly include it in the decree.

Nor is there merit in a more general argument that the district court erred by finding for Poppe. While Rice highlights Koenig's testimony, she fails to account for the testimony of Poppe's expert, Ballew, who testified that Poppe's conduct did not fall below the applicable standard of care. Our standard of review is deferential; we review for clear error and consider the evidence in a light most favorable to the successful party.

In this instance, the parties offered conflicting testimony regarding whether Poppe's conduct fell below the applicable standard of care. The district court found for Poppe and, in doing so, found Ballew to be more persuasive. Ballew testified that Poppe's actions in gathering information and drafting and advising Rice regarding the property settlement agreement were proper. Ballew further opined that not only

[10] *Id*. at 697, 861 N.W.2d at 696-97.

[11] *Id*. at 698, 861 N.W.2d at 697.

was it proper to include the so-called "boilerplate" language which Rice complains of, but that it was "essential," and that those provisions were ubiquitous. Ballew further testified that he would not have gone "line-by-line" through the waiver provisions.

Because we conclude that the district court did not err in concluding that Poppe did not breach any duty owed to Rice, and further that Rice could not show that, even assuming a breach of duty, that Poppe's action were the proximate cause of her injury, we need not address Rice's second assignment of error.

There is no merit to Rice's appeal. We affirm.

## CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

Stacy, J., not participating.