IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SCHULZE V. RASMUSSEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AMY SCHULZE AND PAUL FLEUREN, APPELLANTS,

V.

MATT RASMUSSEN ET AL., APPELLEES.

Filed August 25, 2020.    No. A-19-901.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Amy Schulze, pro se.

Paul Fleuren, pro se.

Clarence E. Mock, of Johnson & Mock, P.C., L.L.O., for appellees Matt Rasmussen and Bear Homes, P.C.

Andrew M. Hollingsead and Michael J. Matukewicz, of Liakos & Matukewicz, L.L.C., for appellee NP Dodge Real Estate Sales, Inc.

John D. Stalnaker, of Stalnaker, Becker & Buresh, P.C., for appellee Old Republic National Title Insurance Company.

Thomas J. Anderson, P.C., L.L.O., for appellee Midwest Title, Inc.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

INTRODUCTION

In 2017, Amy Schulze and Paul Fleuren sued several defendants in the Washington County District Court related to problems with their home, which they had purchased in 2016. For most

- 1 -

of the pretrial proceedings, Schulze and Fleuren were represented by two different attorneys during nonoverlapping periods of time. Schulze and Fleuren were present and represented by counsel when a settlement agreement between all parties was read into the record during a pretrial conference in July 2019. Thereafter, Schulze and Fleuren, as pro se litigants, disputed the enforceability of the settlement agreement. On August 21, the district court ordered that the settlement agreement was an enforceable contract, and therefore all claims by all parties in this action were dismissed with prejudice in accordance with the settlement agreement. Schulze and Fleuren, pro se, appeal the judgment. We affirm.

## BACKGROUND

### PARTIES INVOLVED WITH REAL ESTATE TRANSACTION

The underlying dispute in this action revolves around a log cabin home in Arlington, Nebraska. Bear Homes, P.C. (Bear Homes), had owned that property since March 2015. Matt Rasmussen was the president of Bear Homes. He was also a Nebraska real estate licensee affiliated with NP Dodge Real Estate Sales, Inc. (NP Dodge), a real estate brokerage company, pursuant to the terms of an "Independent Contractor Agreement." On March 23, 2016, NP Dodge agreed to provide licensed real estate services on behalf of Bear Homes to find a purchaser for the Arlington home. That same day, Schulze and Fleuren executed an agreement to purchase it. Around March 28, title insurance underwriter Old Republic National Title Insurance Company (Old Republic), through its agent Midwest Title, Inc. (Midwest Title), issued a title insurance commitment to Schulze and Fleuren in connection with the purchase. On May 9, Rasmussen, in his capacity as the president of Bear Homes, conveyed the Arlington home by corporate warranty deed to Schulze and Fleuren. On May 25, Old Republic, through Midwest Title, issued a title insurance policy to Schulze and Fleuren for their new home.

### INITIAL PRETRIAL PROCEEDINGS

On May 10, 2017, Schulze and Fleuren, through counsel, filed a complaint against Rasmussen, Bear Homes, "NP Dodge Realty Inc." (not NP Dodge), Old Republic, and Midwest Title regarding their Arlington home. On June 20, Schulze and Fleuren filed an amended complaint against Rasmussen, Bear Homes, NP Dodge, Old Republic, and Midwest Title. Schulze and Fleuren asserted that Rasmussen and Bear Homes had known that the property had code violations and nonconforming uses. Allegedly, Rasmussen and Bear Homes had "flipp[ed]" the home without permits and in a defective manner but did not disclose the defective work to Schulze and Fleuren. Schulze and Fleuren asserted there were problems related to the basement, septic system, exterior steps, retaining wall, water leakage, and generally the interior and exterior work. The amended complaint set forth claims of fraud/material misrepresentation, fraudulent concealment, negligent misrepresentation, and violation of Neb. Rev. Stat. § 76-2,120 (Cum. Supp. 2016) (governing seller real property condition disclosure statements) against Rasmussen, Bear Homes, and NP Dodge; negligence and breach of contract claims against Bear Homes; and claims of breach of contract (bad faith denial of insurance coverage) and negligence (failure to discover code violations) against Old Republic and Midwest Title. Schulze and Fleuren sought $147,925 in damages against Rasmussen, Bear Homes, and/or NP Dodge, as well as $69,060 in damages

against Bear Homes and/or Midwest Title and Old Republic. They sought an award of attorney fees and costs under each claim.

The defendants denied the material allegations brought against them, asserted various affirmative defenses, and asked that the complaint and/or amended complaint be dismissed with prejudice. Old Republic asserted a counterclaim against Schulze and Fleuren for a declaratory judgment as to the scope of their insurance coverage and duty to cooperate with a related investigation. Old Republic and Midwest Title moved for summary judgment, in whole or in part, as to one or both claims brought against them. In January 2018, the district court dismissed with prejudice the negligence claim against the title companies as it was barred by the economic loss doctrine. The breach of contract claim against the title companies was dismissed with prejudice to the extent that it was based on the title commitment, which had been replaced by the title insurance policy.

On October 21, 2018, Schulze and Fleuren filed a second amended complaint, which was substantially similar to its prior complaint. Additional allegations were that they discovered certain defects as a result of a whole house inspection and that Rasmussen and Bear Homes had agreed to repair and remedy those defects but "[a]ny repair work was defective and the defects were not remedied." The same claims as pled before were brought against the same defendant or defendants, except the breach of contract claim against the title companies was based on the title insurance policy, not the commitment. The defendants denied the material allegations against them, alleged affirmative defenses, and asked that the second amended complaint be dismissed with prejudice. Thereafter, the defendants filed motions for summary judgment and/or partial summary judgment as to various claims. Midwest Title challenged a procedural aspect of the case.

On February 26, 2019, attorney Douglas W. Ruge filed a motion for leave to withdraw as counsel for Schulze and Fleuren on grounds of "irreconcilable differences" with them regarding representation and a "breach of agreement with counsel." On February 27, the district court dismissed with prejudice the claim under § 76-2,120 due to finding that this lawsuit was not filed within the applicable 1-year statute of limitations, which was found to have not been tolled. Further, any claims that NP Dodge was vicariously liable for common law duties (i.e., fraud/material misrepresentation, fraudulent concealment, or negligent misrepresentation) were dismissed with prejudice; rather, NP Dodge could only be vicariously liable if Rasmussen, as licensee, breached a statutory duty he owed to Schulze and Fleuren. On March 7, Ruge was allowed to withdraw as counsel for Schulze and Fleuren. Ruge then filed a notice of an attorney lien in the amount of $37,406 for attorney fees and costs out of the course of such representation.

On April 24, 2019, the district court again dismissed with prejudice the negligence claim against the title companies. Midwest Title was denied summary judgment in its favor as to the breach of contract claim against it. Summary judgment in Old Republic's favor on the same claim was granted in part and denied in part with respect to potential liability in connection with types of covered risk under the title insurance policy. Certain defendants moved to clarify and/or alter or amend summary judgment rulings entered in 2019. Later-filed orders clarified and/or declined to alter or amend prior rulings.

PRETRIAL PROCEEDINGS RELATED TO SETTLEMENT

On May 16, 2019, attorney John H. Sohl entered his appearance as counsel for Schulze and Fleuren. On July 8, Schulze and Fleuren filed a motion to continue the pretrial conference scheduled for July 16 and related deadlines. They alleged that Ruge had not given them the "information needed," a copy of their case file, despite Schulze's repeated requests. On July 11, by the request of Schulze and Fleuren, a subpoena duces tecum was issued to command Ruge to appear in court on July 16 with the unprivileged parts of their case file. The pretrial conference remained set for July 16.

All parties' counsel appeared for the pretrial conference on July 16, 2019. Schulze and Fleuren were personally present as well. The district court stated it had been notified that a settlement had been reached. Counsel for NP Dodge indicated that the parties had agreed to have the terms of the settlement read into the record. NP Dodge's counsel stated that the parties would enter into a written settlement agreement providing the following:

First, the defendants [NP Dodge], [Old Republic], [Midwest Title], [Rasmussen] and [Bear Homes], shall collectively pay $50,000 as settlement proceeds. Such proceeds shall be deposited in my firm's trust account . . . and from that trust account a check in the amount of $50,000 will be issued and delivered to plaintiffs' counsel [(Sohl)]. That check will be made payable to [Fleuren] and [Schulze], and [Ruge, Schulze's and Fleuren's former counsel].

Second, upon -- Excuse me. Second, the parties shall release one another of all claims arising from or relating to [Schulze's and Fleuren's] purchase of the [Arlington] residence . . . , including the title conditions relating to the subject residence alleged by [Schulze and Fleuren] in this action.

Third, all claims alleged in this action shall be dismissed with prejudice, with each party to bear their own costs.

Upon questioning by the district court, NP Dodge's counsel and Sohl (on behalf of Schulze and Fleuren) indicated that they agreed to payment of the settlement check and/or circulation of the releases by August 5.

The district court received confirmation from counsel for Old Republic, Midwest Title, and Rasmussen and Bear Homes that the foregoing was the agreement as they understood it to be. Thereafter, the following colloquy took place.

THE COURT: [Sohl], is that your understanding of the agreement?

[Sohl]: It is, Your Honor.

And, if I may, is that your understanding, [Schulze]?

[Schulze]: Yes.

[Sohl]: Okay. By the way, there is a power of attorney which has been executed by [Fleuren] to [Schulze], so that's why I'm not talking to or asking [Fleuren].

THE COURT: Sure.

[Fleuren], you're present today and you heard all of this, is that correct, sir?

[Fleuren]: Yeah.

THE COURT: Okay.

[Fleuren]: Yes, sir.

THE COURT: And, [Schulze], you've heard all of this?

[Schulze]: Yes.

THE COURT: Okay. And you've had an opportunity to consult with [Sohl] obviously about this?

[Schulze]: Yes.

THE COURT: Very good. All right. And that sounds like the agreement is accepted by everybody and we have a deadline of August 5th, 2019, to get that accomplished.

The district court accepted the settlement agreement and stated it would cancel the jury trial that had been set for August 19.

According to NP Dodge's counsel, on July 17, 2019, Schulze telephoned his office and told his assistant that the settlement agreement was "'off'" and that the defendants were not to "'bother'" preparing the check for payment of the settlement proceeds. She informed that she and Fleuren had terminated Sohl as their attorney. Per Midwest Title's counsel, Schulze telephoned his office the same day and made similar statements to him. Also on July 17, Fleuren revoked a document that had originally been signed on July 15 making Schulze his power of attorney to take all action necessary concerning this case.

On July 18, 2019, Sohl filed a motion to withdraw. Among other things, Sohl asserted that during a telephone call on the morning of July 17, he had a disagreement with Schulze during which she asked what she should do to which Sohl said, "'Get someone else.'" Schulze replied, "'Okay.'" Sohl alleged that he had a subsequent conversation with Schulze who wished to pursue a course of conduct that he felt was "repugnant" and over which they had a "fundamental disagreement." Sohl was "now informed" that the "steps" he took on Schulze's and Fleuren's behalf during the July 16 pretrial conference were not what they desired. That same day, the district court entered a journal entry regarding the July 16 pretrial conference. It noted that a settlement agreement had been read into the record and that all counsel and both Schulze and Fleuren acknowledged its terms. The cash settlement was to be paid to NP Dodge's counsel's trust account "as soon as possible" with distribution of a check from NP Dodge's counsel's trust account. Releases and a motion to dismiss were to be exchanged on or before August 5. The district court cancelled the August 19 jury trial "due to complete settlement of issues."

On July 25, 2019, Schulze and Fleuren, pro se, filed a motion to allow Sohl's withdrawal. They alleged that Sohl refused to represent them in the manner for which he was retained. They claimed to have been trying to reach a settlement for several weeks while also trying to retrieve their case file from Ruge. They had not obtained the file. They disputed that they had reached a settlement with the defendants and stated they would not accept the "proposed offer" that "[Sohl] had wanted to settle for." On July 26, the district court granted Sohl's motion to withdraw.

On August 5, 2019, the defendants filed a joint motion to enforce the settlement agreement "recited and accepted by the parties on the record" during the July 16 pretrial conference. The record shows that, on August 5, Old Republic's counsel emailed a written settlement document to

Schulze and Fleuren for their review and signature. Schulze and Fleuren did not respond to the email.

On August 19, 2019, Schulze and Fleuren, pro se, filed a motion under which they wished to "declin[e] the offer for settlement." They alleged that during the pretrial conference Sohl "decided" to settle but had failed to "set the stipulations that were to be entered" as agreed upon. Sohl "eagerly rushed" through the hearing and did not address the "issues" that he told them he would address. Schulze and Fleuren claimed they were "not ready" to settle at that time and were still waiting to recover the case file from Ruge so as to "see all documents to prepare a settlement." They believed that $50,000 was not a sufficient settlement amount. They also alleged that they were "not involved in the settlement process" and that it was "done behind close[d] doors" resulting in an offer that was "not in good faith." They contended that the defendants' main concern was to ensure that Ruge would be paid his fees.

On August 20, 2019, a hearing took place on the motions regarding the settlement. All counsel for the defendants were present. Schulze and Fleuren appeared pro se. Over no objection from Schulze and Fleuren, the following exhibits were received into evidence in support of the defendants' motion to enforce the settlement agreement: the bill of exceptions from the July 16 pretrial conference; affidavits by counsel for NP Dodge, Old Republic, and Midwest Title; and a copy of the settlement check. Over denied relevancy objections, the following exhibits offered by Schulze and Fleuren were received into evidence: their title insurance policy for their home and correspondence regarding their insurance claim from 2016, as well as deeds related to their home; a 2003 filing with the Washington County Register of Deeds related to their home; and a copy of a May 9, 2016, check from Midwest Title to NP Dodge.

After the receipt of evidence, Schulze and Fleuren each argued in support of their request to not be bound by the settlement agreement. Generally, they reiterated arguments set forth in their August 19, 2019, motion, including that they were not ready to settle on July 16, that the settlement agreement did not include "stipulations" they wanted in place, and that $50,000 was not an adequate settlement amount. Also, Schulze disputed that Sohl had "full authorization" to enter the settlement on her and Fleuren's behalf. During the hearing, NP Dodge's counsel hand delivered the actual settlement check to Schulze and Fleuren. The settlement check, in the amount of $50,000, was made payable to Schulze, Fleuren, and Ruge from NP Dodge's counsel's firm's trust account; it was dated August 5, 2019. At the end of the hearing, the district court indicated on the record that Schulze and Fleuren "walked away and left the $50,000 check on [counsel's] table."

On August 21, 2019, the district court entered an order granting the motion to enforce the settlement agreement. It found that the settlement agreement was an enforceable contract and that the defendants had performed all of their obligations under it, including the delivery of the settlement funds as agreed upon. Each defendant was therefore released of all claims possessed by Schulze and/or Fleuren arising from or relating to their purchase of the Arlington home. All claims by all parties in this action were dismissed with prejudice, with each party to bear their own costs.

On August 29, 2019, NP Dodge's counsel filed an affidavit, alleging that the settlement check had been mailed to Schulze's and Fleuren's home address on August 21 but that, on August 28, it was returned by mail to NP Dodge's counsel's office.

Schulze and Fleuren, pro se, filed a joint notice of appeal.

## ASSIGNMENTS OF ERROR

The replacement brief filed by Schulze and Fleuren, pro se, fails to comply with appellate court rules. Required brief sections are incorrectly ordered, improperly merged, or nonexistent in their brief. See Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014) (brief of appellant must contain specific sections, under appropriate headings, in order indicated by subsections to § 2-109(D)(1)).

Although not properly placed in the brief, their brief has a section titled "ASIGNMENT [sic] OF ERROR AND ARGUMENT"; we set forth a portion of that section verbatim, including any typographical and grammatical errors:

> Did the District Court Judge apply the standard of review required to, sustain the Motion to Enforce Settlement Agreement, dismissing the Trial By Jury before the Written settlement had been filed with the District Court Clerk and verifying the delivery to the Appellants by August 5,2019, before sustaining the defendants Motion and dismissing the case with prejudice on August 20,2019?
>
> No. . . . .

Brief for appellants at 8-9. We understand the apparent sole assigned error as claiming that the district court erred by sustaining the defendants' motion to enforce the settlement agreement and dismissing all claims by all parties in this case with prejudice. The rest of the section titled "ASIGNMENT [sic] OF ERROR AND ARGUMENT" and a section immediately following titled "ASSIGNMENT OF ERRORS ARGUMENT" are dedicated to generally complaining about the district court's August 21 order, which enforced the settlement agreement and dismissed all claims with prejudice. *Id.* Thereafter, the brief has a heading entitled "STATEMENT OF FACTS," and any arguments made therein will not be addressed unless they specifically relate to the district court's order enforcing the settlement agreement and dismissing the case. *Id.* at 10. We therefore address only that assigned error.

As a matter of completeness, we note that Schulze and Fleuren attempt to assign an error or errors in their reply brief. However, errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Thus, our review is limited as previously stated.

## STANDARD OF REVIEW

A settlement agreement is subject to the general principles of contract law. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000). The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Id.*

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *Rice v. Poppe*, 302 Neb. 643, 924 N.W.2d 344 (2019).

ANALYSIS

Schulze and Fleuren claim that the district court erred by enforcing the settlement agreement and dismissing their case with prejudice.

As an initial matter, they dispute the standard of review the district court had to employ with regard to the motion to enforce the settlement agreement. They believe the district court was obligated to "draw all reasonable inferences in the light most favorable to [them]." Brief for appellants at 9. That principle of law is inapplicable in this context. See *Bierman v. Benjamin*, 305 Neb. 860, 943 N.W.2d 269 (2020) (standard of review for summary judgments). Rather, with respect to the motion to enforce the settlement agreement, the district court had considerable discretion when making findings of fact. See, *Rice v. Poppe, supra* (trial court is fact finder in bench trial of law action); *Stauffer v. Benson*, 288 Neb. 683, 850 N.W.2d 759 (2014) (in bench trial of law action, trial court is sole judge of witnesses' credibility and weight to be given their testimony). We now proceed to set forth the pertinent law governing the enforceability of settlement agreements.

To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Strategic Staff Mgmt. v. Roseland, supra*. See, also, *Linscott v. Shasteen, supra* (to create contract, there must be both offer and acceptance; there must also be meeting of minds or binding mutual understanding between parties to contract). A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Linscott v. Shasteen, supra*. The determination of the parties' intent to make a contract is to be gathered from objective manifestations--the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Id.*

A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). Consideration is an essential element to the validity of a contract. See *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014). Consideration is sufficient to support a contract if there is any detriment to the promisee or any benefit to the promisor. *Heineman v. Evangelical Luth. Good Sam. Soc.*, 300 Neb. 187, 912 N.W.2d 751 (2018).

When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000). In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *Id.*

Two Nebraska cases, *Woodmen of the World Life Ins. Soc. v. Kight*, 246 Neb. 619, 522 N.W.2d 155 (1994), and *Strategic Staff Mgmt. v. Roseland, supra*, warrant discussion here.

*Woodmen of the World Life Ins. Soc. v. Kight, supra*, involved a declaratory judgment action brought to determine the rights of the parties with respect to a contract after the plaintiff terminated its relationship with the defendant. On the morning of trial, the parties reached a

settlement of all their differences. The defendant and his attorneys personally negotiated settlement terms with the plaintiff's representatives. Later, in the courtroom, the parties' attorneys recited on the record the terms of the settlement agreement reached between the parties. The record reflected that the defendant had agreed to the provisions recited and had given his counsel authority to settle and have the matter dismissed with prejudice. Subsequently, the defendant refused to sign settlement documents, and the plaintiff filed a motion to confirm the settlement. During a hearing, the trial court received affidavits from the parties' attorneys containing statements that the settlement documents accurately reflected the terms of the settlement agreement, a transcript of the proceedings wherein the agreement had been read into the record, and testimony from the defendant as to why he did not sign the written documents. The trial court granted the plaintiff's motion to confirm the settlement agreement.

On appeal, the Nebraska Supreme Court, citing *Koch v. Koch*, 226 Neb. 305, 411 N.W.2d 319 (1987) (ordinarily, power of attorney to act for client in action is considered valid and sufficient until disproved), found that the defendant had failed to show that his attorneys were without authority to settle the case. It was noted that settlement documents reflected the terms that were recited into the record. The decision of the trial court was affirmed.

*Strategic Staff Mgmt. v. Roseland, supra*, involved an action alleging trade secret violations and tortious interference by the defendants with the plaintiff's business contracts. Before trial, the parties took part in mediation, during which they reached an accord that was reduced to a memorandum of agreement. The memorandum was reviewed by the parties' representatives and signed by their attorneys. The language of the memorandum included a provision stating that the plaintiff would execute a general release of certain claims in favor of the defendants. The parties then exchanged three drafts of the release but could not agree on the final language of the release. The defendants then filed a motion to enforce the settlement agreement. The trial court granted the motion, finding that the settlement agreement should be enforced in accordance with the original memorandum of agreement signed by the parties' attorneys following the mediation.

On appeal, the plaintiff in *Strategic Staff Mgmt. v. Roseland, supra,* argued that the memorandum of agreement was not a final settlement; but, rather, it was an agreement to make an agreement. The Nebraska Supreme Court determined that the evidence showed a definite offer and unconditional acceptance. It noted that the parties created several drafts of the memorandum at the mediation hearing before finding agreeable language and that the parties informed the trial court at a pretrial conference that a settlement had been reached. The parties placed no qualifications on their announcement to the trial court. The plaintiff argued that the necessity of executing future settlement documents reflected the parties' lack of intent to be bound by the memorandum of agreement. However, the Supreme Court observed that the terms of the general release document did not present any materially new terms, but instead, elaborated on the terms set forth in the memorandum of agreement. The Supreme Court recognized that a contract provision to execute effectuating documents in the future is enforceable where all of the material terms are specified in the original contract and leave none to be agreed upon through future negotiations. The Supreme Court stated that it would have been a simple matter for the parties to include provisions in the memorandum stating that certain terms would be agreed upon later or that the terms of the memorandum would not take effect until the general release was executed. Instead, all material

terms had been set forth in the memorandum without conditions and executed by counsel for the parties in the parties' presence.

The plaintiff in *Strategic Staff Mgmt. v. Roseland, supra,* further claimed that lack of good faith on the defendants' part was sufficient justification for the district court to deny the motion to enforce the settlement agreement. The trial court had found that no credible evidence had been submitted to support allegations of bad faith; the Supreme Court determined that the trial court's finding was not clearly erroneous. The Supreme Court affirmed the trial court's determination that a valid settlement agreement had been entered into by the parties and its decision to enforce the agreement according to its terms.

In this case, the following evidence was admitted during the August 20, 2019, hearing. In his affidavit, NP Dodge's counsel averred that he received a letter from Sohl on July 15. The letter, attached to the affidavit, showed that on July 15, Sohl wrote to NP Dodge's counsel that Schulze and Fleuren had "authorized" him to settle for $50,000 "as to all parties with regards to [this case]." NP Dodge's counsel stated that after receiving that letter, he conferred with counsel for the other defendants and all defendants decided to collectively accept the offer. NP Dodge's counsel further communicated to Sohl, on July 15, that the defendants were ready, willing, and able to collectively pay $50,000 in exchange for a mutual release of liability and dismissal with prejudice of all claims alleged in the case, with each party to bear their own costs and such terms to be memorialized in a written agreement to be executed by the parties on a later date.

As set forth in detail previously, during the pretrial conference on July 16, 2019, the terms of the settlement agreement were read into the record. We find that those terms were clear and definite and that the agreement was supported by sufficient consideration by all of the parties involved. The record of the July 16 pretrial conference further shows that all of the defendants, through their counsel, agreed that the terms read into the record that day reflected their understanding of the agreement. Sohl, then-counsel for Schulze and Fleuren, likewise agreed.

We note that although lawyers retain apparent authority to make procedural and tactical decisions through the existence of the attorney-client relationship, a lawyer cannot settle a client's claim without express authority from the client. *Luethke v. Suhr*, 264 Neb. 505, 650 N.W.2d 220 (2002). See, also, Neb. Ct. R. of Prof. Cond. § 3-501.2(a) (rev. 2008) (lawyer may act on behalf of client as is "impliedly authorized" to carry out representation, however lawyer "shall abide by a client's decision whether to settle a matter"). Settlements negotiated by lawyers without authority from their clients are generally not binding. See *Luethke v. Suhr, supra*. "A narrow exception to this rule occurs when a lawyer settles a claim in excess of actual authority, but *in the presence of his or her client*, generally in open court, and the client remains silent regarding the terms of the settlement." *Luethke v. Suhr*, 264 Neb. at 512-13, 650 N.W.2d at 227. (Emphasis supplied.)

To the extent that Schulze and Fleuren maintain that Sohl was not authorized to enter the specific settlement agreement on their behalf as he did on July 16, 2019, the record shows that the narrow exception described in *Luethke v. Suhr, supra*, would apply as the settlement terms were read into the record in open court and in the presence of Schulze and Fleuren. At that time, Schulze and Fleuren both personally confirmed that they had heard all of the terms. They were given the opportunity to voice objection or disagreement to any of the stated terms but did not do so. In fact, Schulze personally agreed that she had an opportunity to consult with Sohl about the settlement

- 10 -

and that the terms recited into the record reflected her understanding of the agreement. When the district court declared that the agreement had been accepted by "everybody," no party objected. We find that the record established that there was unconditional acceptance to the settlement agreement read into the record on July 16.

In an apparent reference to the written settlement document, Schulze and Fleuren assert that the defendants attempted to enforce "unstipulated terms" not agreed upon during the July 16, 2019, pretrial conference, which they believe is a "violation of the law." Brief for appellants at 9. This assertion has no merit.

According to Old Republic's counsel, the written settlement document contained "no terms of substance that were not included in the terms recited into the record on July 16, 2019," but "the only additional terms [were] boilerplate terms regarding such standard items as non-admission of liability, interpretation and enforcement of the agreement, and authority to execute, as well as a section of recitals setting forth in broad terms the identities of the parties thereto." After reviewing the document, which was attached to Old Republic's counsel's affidavit, we agree. Similar to *Woodmen of the World Life Ins. Soc. v. Kight*, 246 Neb. 619, 522 N.W.2d 155 (1994), and *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000), the terms of the written settlement document in this case accurately reflected the oral settlement terms and did not present any materially new terms. The recitals and standard boilerplate language in the document were an acceptable elaboration of the material terms that had been previously clearly and unconditionally agreed upon by all parties.

The law favors and encourages settlements, and in the absence of fraud, error, or mistake, they should not be set aside. *Fleischer v. Broders*, 178 Neb. 723, 135 N.W.2d 5 (1965). Schulze and Fleuren complain that the defendants deceived and forced them to accept the settlement and that they were under duress from Sohl's "misguided representation" regarding what the amount of the settlement offer would be when they appeared for the July 16, 2019, pretrial conference. Brief for appellants at 10. Schulze and Fleuren "thought" they were appearing that day only to discuss options of settling and to retrieve case files from Ruge. *Id.* There is nothing in the record that supports any of these assertions. If any such evidence existed, Schulze and Fleuren failed to offer it during the August 20 hearing regarding the settlement agreement. See *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017) (it is appellant's burden to create record for appellate court which supports errors assigned).

Instead, Schulze and Fleuren improperly rely on their August 19, 2019, motion under which they attempted to withdraw from the settlement as support for their contention that they showed the district court that "no settlement agreement had been reached." Brief for appellants at 9. See *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017) (pleadings alone are not proof but mere allegations of what parties expect evidence to show; bill of exceptions is only vehicle for bringing evidence before appellate court). And, they inappropriately place evidentiary value on the unsworn arguments they made as pro se litigants during the August 20 hearing. See, *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015) (pro se litigant is held to same standards as one who is represented by counsel); *City of Lincoln v. MJM, Inc.*, 9 Neb. App. 715, 618 N.W.2d 710 (2000) (unsupported assertions of facts by attorney during court proceedings do not establish facts asserted unless appropriate parties stipulate to such facts).

We find that the settlement agreement was an enforceable contract and that there is nothing in the record requiring that it be set aside. As noted by the district court, the defendants performed all of their obligations under the settlement agreement and are entitled to the benefits for which they bargained. We therefore conclude that the district court correctly enforced the settlement agreement and dismissed this case with prejudice.

CONCLUSION

We affirm the August 21, 2019, judgment of the district court.

AFFIRMED.