STRATEGIC STAFF MANAGEMENT, INC., APPELLANT, V.
MICHAEL ROSELAND ET AL., APPELLEES.

619 N.W. 2d 230

Filed November 9, 2000.    No. S-99-1043.

Jeffrey A. Silver for appellant.

Thomas F. Hoarty, Jr., and Scott A. Calkins, of Byam & Hoarty, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Appellees Michael Roseland, Thomas Lentz, Timothy Brotzki, and Profit Advantage, Inc., filed a motion to enforce a settlement agreement reached during mediation negotiations with appellant Strategic Staff Management, Inc. (Strategic). Strategic resisted the motion, arguing that a final agreement had not been reached and that the appellees had acted in bad faith. After a hearing, the district court sustained the motion based on its findings that the parties had resolved all issues in dispute and that there was no credible evidence to support the allegations of bad faith. We conclude that a valid settlement agreement had been entered into by the parties and, therefore, affirm the district court's decision to enforce the agreement according to its terms.

## BACKGROUND

Roseland, Lentz, and Brotzki are all former key employees of Strategic, a professional employer organization. All three terminated their employment with Strategic on May 21, 1998, and formed Profit Advantage, Inc., a company also engaged as a professional employer organization. As a preliminary matter, we note that the interests of Roseland, Lentz, and Brotzki coincide with the interests of Profit Advantage, Inc., in this appeal. Therefore, for ease of discussion, the appellees will be referred to as "Profit." Strategic brought suit against Profit for alleged violations of Nebraska's Trade Secrets Act, Neb. Rev. Stat. §§ 87-501 through 87-507 (Reissue 1999), and for tortious interference with Strategic's business contracts.

The district court issued a 2-year temporary injunction against Profit, enjoining it from actively soliciting or contacting any of Strategic's clients until May 21, 2000. Trial was set for July 12, 1999. Before trial, the district court referred the matter to mediation, which was conducted on June 21. Corporate representatives for each party were present, as were the parties' attorneys.

During the mediation hearing, the parties reached an accord that was reduced to a memorandum of agreement. The memorandum of agreement was reviewed by representatives for both sides and signed by each party's attorney. We set forth the agreement:

### MEMORANDUM OF AGREEMENT

1. The parties have agreed that the language of Judge Lamberty's temporary injunction entered in the matter of Strategic Staff Management, Inc. vs. Roseland et. al. found at Docket 976 Number 768 in the District Court of Douglas County, Nebraska entered March 30, 1999 will extend by agreement of the parties until January 1, 2004, at which time it will expire. The agreement excepts from the injunction the customers listed in defendant's response to interrogatory number, 5 and the new division of Central Logistics in Hastings Nebraska.

2. Plaintiff will execute a general release of all claims in favor of all defendants except as to the Gottsch case filed in Douglas County District Court, any COBRA issues that may arise and future violations of the injunction.

3. The Plaintiff's claim for damages in the injunction suit will be dismissed with prejudice.

4. Each party will be responsible for their own attorney fees and costs in the injunction suit.

That same day, Profit's attorney, Thomas F. Hoarty, Jr., faxed and mailed a proposed general release and a proposed agreed order and judgment to Strategic's attorney, Jeffrey A. Silver. The agreed order and judgment to be signed by the court was revised and signed by both Hoarty and Silver. Silver made changes to the general release and faxed a copy back to Hoarty the following day. Hoarty made Silver's changes and returned a revised copy of the general release to Silver.

A pretrial conference was scheduled for the next morning. Hoarty asked Silver to make additional changes to the general release that morning before the conference, and Silver agreed. Silver told Hoarty to get the changes made and delivered, and Silver would have Strategic's representatives sign the general release. At the conference, the parties informed the court that a settlement had been reached. However, when Silver later had Strategic's representatives in California review the latest revision, Strategic indicated that it did not wish to proceed with the settlement.

On July 7, 1999, Silver informed Profit that Strategic found the new language of the general release unacceptable and would not execute the settlement agreement and release. Strategic also accused Profit of intentionally contacting Strategic's clients and slandering Strategic in violation of the spirit and intent of the settlement discussions. Profit then filed a motion to enforce the settlement agreement, which motion was resisted by Strategic.

At a hearing on the motion, Silver acknowledged that he had executed the memorandum of agreement on behalf of Strategic and admitted that he had agreed to the new language of the general release suggested by Hoarty just before the pretrial conference. After the hearing, the district court sustained the motion to enforce the agreement, based on its finding that the parties had reached an agreement which resolved all issues in dispute. The court further found that there was no credible evidence to support Strategic's allegations that Profit had contacted Strategic's clients or disparaged or slandered Strategic. Finally, the court

noted that Strategic was unwilling to suggest alternative language for the section of the settlement agreement pertaining to the general release. The district court therefore ordered that all provisions of the parties' agreement be enforced in accordance with the original memorandum of agreement and the agreed order and judgment. Strategic timely appeals from the district court's order.

## ASSIGNMENTS OF ERROR

Strategic assigns that the district court erred in finding that a settlement agreement existed between Strategic and Profit and in enforcing it accordingly.

## STANDARD OF REVIEW

■ The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Keller v. Bones, ante* p. 202, 615 N.W.2d 883 (2000); *Fraternal Order of Police v. County of Douglas,* 259 Neb. 822, 612 N.W.2d 483 (2000).

■ In a bench trial of an action at law, the factual findings by the trial court have the effect of a jury verdict and will not be set aside unless they are clearly wrong. *Ruble v. Reich,* 259 Neb. 658, 611 N.W.2d 844 (2000); *Bachman v. Easy Parking of America,* 252 Neb. 325, 562 N.W.2d 369 (1997).

## ANALYSIS

Strategic does not dispute that Silver had authority to sign the memorandum of agreement at the mediation hearing, but it contends that the district court should not have sustained Profit's motion to enforce the settlement agreement because the memorandum of agreement signed by Silver was not a final settlement.

■ A settlement agreement is subject to the general principles of contract law. *Woodmen of the World Life Ins. Soc. v. Kight,* 246 Neb. 619, 522 N.W.2d 155 (1994). The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Keller v. Bones, supra; Fraternal Order of Police v. County of Douglas, supra.*

To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Heese Produce Co. v. Lueders*, 233 Neb. 12, 443 N.W.2d 278 (1989). When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *Farmers Union Co-op Ins. Co. v. Allied Prop. & Cas.*, 253 Neb. 177, 569 N.W.2d 436 (1997).

According to Strategic, the memorandum of agreement was only an agreement to make an agreement. The facts introduced at the hearing, without objection, however, show a definite offer and unconditional acceptance. The record indicates the parties created three drafts of the memorandum of agreement at the mediation hearing before finding language that both parties and their attorneys agreed upon. Both parties informed the district court at a pretrial conference that a settlement had been reached, and no qualifications were placed on that announcement.

The record does indicate that Strategic found the changes made to the general release objectionable because it believed the revised language of the general release was broader than that of the memorandum of agreement. Paragraph 2 of the memorandum of agreement required Strategic to execute a general release of all claims in favor of Profit with three exceptions: (1) a specific claim in the Douglas County District Court, (2) any "COBRA" claims that arose in the future, and (3) any future violations of the injunction.

The final revision of the general release required Strategic to release all "claims, demands, damages or suits of any kind or nature, whether known or unknown, which they may now or hereafter have as of the [mediation] date," subject to the same exceptions. Strategic argued at the hearing that this new language was much broader than that of the previous revision. The district court, however, found that Silver, Strategic's counsel, had agreed to the changes and that Strategic had failed to suggest alternative language for the clause it found unacceptable.

Strategic argues that the preceding exchange of drafts dealing with the general release demonstrates the parties' lack of intent

to be bound by the document. In support of this argument, Strategic relies on two federal circuit cases for the proposition that an unexecuted draft document is not a binding settlement agreement. The facts of these two cases, however, are distinguishable.

In *Wang Laboratories v. Applied Computer Sciences*, 958 F.2d 355 (Fed. Cir. 1992), the parties had informed the district court that they had agreed on the eve of trial to settle. The negotiations had produced a draft settlement document that neither party signed. *Id.* When the plaintiff then filed a motion to enforce the settlement, the district court estopped the defendants from claiming that a settlement had not been reached. *Id.*

The federal circuit court reversed on appeal, noting that the parties had informed the district court three different times that the settlement agreement " 'is not yet in final form and has not yet been executed.' " *Id.* at 359. In addition, the draft document specified that it could not be amended unless executed by the parties. *Id.* The circuit court determined that "no reasonable fact-finder could conclude that the parties intended that the agreement would be binding without execution of the documents by both parties." *Id.*

In *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752 (8th Cir. 1996), the plaintiff had told its trial counsel the parties had reached a settlement that would be binding when reduced to writing. The plaintiff's counsel had then informed the district court that there was a settlement. Based on that information, the district court then dismissed the action sua sponte. *Id.* On appeal, however, neither party contended that a settlement agreement, written or oral, had been reached. On these circumstances, the federal circuit court concluded the district court had erred in finding that the parties had agreed to settle.

The present case is distinguishable from both of these federal cases. Unlike *MIF Realty L.P.*, the agreement in this case was reduced to writing. Unlike both cases, the memorandum of agreement in this case was executed by each party's counsel.

Although Strategic argues that the necessity of executing future settlement documents demonstrates the parties' lack of intent to be bound by the memorandum of agreement, Strategic's reliance on this argument fails to take into consider-

ation our prior holdings on this issue. In *Satellite Dev. Co. v. Bernt*, 229 Neb. 778, 429 N.W.2d 334 (1988), a property seller argued that a purchase agreement was not a binding contract because a paragraph in the agreement required that a future contract be made with respect to a second mortgage. We noted that the evidence did not show that the second contract was a precondition to performance under the purchase agreement, and we stated that the terms of the second contract were only an elaboration on the terms of the purchase agreement. *Id.* Because the purchase agreement was controlling, we concluded the sellers were bound by it in spite of their refusal to execute a second contract that was part of the transaction. *Id.*

▪ Likewise, in this case, none of the terms of the general release present materially new terms. Rather, the general release is an elaboration of the terms set forth in the memorandum of agreement. A contract provision to execute effectuating documents in the future is enforceable where all of the material terms are specified in the original contract and leave none to be agreed upon through future negotiations. See *id.* See, also, 17A Am. Jur. 2d *Contracts* § 35 (1991).

The parties did not provide in the memorandum of agreement that certain terms would be agreed upon later or that the terms of the memorandum of agreement would not take effect until the general release was executed. It would have been a simple matter to include such a provision in their agreement, had that been the intent. See *Satellite Dev. Co. v. Bernt*, 229 Neb. at 783, 429 N.W.2d at 338 (" '[w]hen an agreement stipulates that certain terms shall be settled later by the parties, such terms do not become binding unless and until they are settled by later agreement' "). Instead, all of the material terms are set forth in the memorandum of agreement, without conditions, and the document was executed by counsel for both parties in the parties' presence.

▪ Finally, Strategic contends that lack of good faith on Profit's part was a sufficient justification for the district court to deny Profit's motion to enforce the settlement agreement. The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive

the benefit of the contract. *Cimino v. FirstTier Bank*, 247 Neb. 797, 530 N.W.2d 606 (1995).

■ The question of a party's good faith in the performance of a contract is a question of fact. *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1988). In a bench trial of an action at law, the factual findings by the trial court have the effect of a jury verdict and will not be set aside unless they are clearly wrong. *Ruble v. Reich*, 259 Neb. 658, 611 N.W.2d 844 (2000); *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997).

In support of the allegation that Profit had contacted Strategic's clients in violation of the injunction, Strategic offered a letter dated July 23, 1999, from one of Strategic's former clients to Nebraska's Department of Labor alleging that Strategic was not properly accounting for unemployment contributions to the State of Nebraska. Leaving aside the sufficiency of this evidence, violations of the injunction were specifically excepted from the general release in the memorandum of agreement. Strategic was not without recourse on this matter.

In support of the allegation that Profit had slandered and disparaged Strategic, Strategic offered a letter dated July 13, 1999, from Nebraska's Department of Insurance to American Employers Group (Strategic's successor in interest) requesting information on its business operations. Strategic seems to argue that the language of the final revision would have deprived it of an action for defamation. However, any claim for defamation would not have existed before the release date and so would not have been lost. See, e.g., *Oliver v. Clark*, 248 Neb. 631, 537 N.W.2d 635 (1995) (holding that settlement agreement which purports to release any and all claims for accident-related damages may be set aside on ground of mutual mistake where there are injuries of serious character wholly unknown to parties and not taken into consideration when release was executed).

First, we note that Silver informed Profit on July 7, 1999, that Strategic would not execute the settlement agreement. The first two letters Strategic offered as evidence of Profit's bad faith were dated after this repudiation. There is also a letter from Lentz to the Department of Insurance suggesting that the department investigate American Employers Group. That letter is

dated April 20, 1999, 2 months before the mediation negotiations.

Although Strategic does not specify exactly when or how it learned of this April letter, the record indicates it did not know the letter existed until it was notified by the Department of Insurance. Without more evidence in the record, it is impossible to determine whether Strategic knew of the letter before the settlement negotiations and chose to ignore it, or learned of the letter at the same time the Department of Insurance wrote American Employers Group about its business practices on July 13, 1999—after Strategic had already repudiated the settlement.

All the letters were attached as exhibits to an affidavit from the vice president of Strategic, who was not available to testify, and the trial court found that no credible evidence had been submitted to support the allegation that Profit had contacted Strategic's clients or disparaged or slandered Strategic. Under these facts, the district court's determination that the evidence did not support allegations of bad faith was not clearly erroneous.

## CONCLUSION

We affirm the district court's determination that a valid settlement agreement had been entered into by the parties, and we likewise affirm the court's decision to enforce the agreement according to its terms.

AFFIRMED.