REQUESTED BY: Senator Mick Mines, Nebraska State Legislature
This is in response to your request for an Attorney General's Opinion generally concerning the authority of the Nebraska Equal Opportunity Commission to negotiate fines. The background materials you submitted in conjunction with your request for an opinion suggest your focus is on the Nebraska Fair Housing Act, Neb. Rev. Stat. §§ 20-301
to 20-344 (Reissue 1997 and Cum. Supp. 2002). As a result, this opinion will address your questions in the context of the Nebraska Fair Housing Act.
The Nebraska Equal Opportunity Commission ("NEOC") plays at least two different roles in its enforcement of the Nebraska Fair Housing Act. The NEOC's duties include those of a conciliator between complainants and respondents and of a quasi-judicial entity.
Pursuant to Neb. Rev. Stat. § 20-327 (Reissue 1997), the NEOC is required to engage in the conciliation of a complaint to the extent feasible. Said section provides in pertinent part that:
 . . . A conciliation agreement arising out of such conciliation shall be an agreement between the respondent and the complainant and shall be subject to approval by the commission.
 . . . A conciliation agreement may provide for binding arbitration of the dispute arising from the complaint. Any such arbitration that results from a conciliation agreement may award appropriate relief, including monetary relief.
If conciliation attempts fail, and the NEOC has determined there is reasonable cause to believe a discriminatory housing practice has occurred, the NEOC shall issue a charge on behalf of the aggrieved person for further proceedings. Neb. Rev. Stat. § 20-333(b)(i) (Reissue 1997). When a charge is issued, a complainant, respondent or an aggrieved person on whose behalf the complaint was filed may elect to have the charge decided in a civil action. Neb. Rev. Stat. § 20-335 (Reissue 1997). If a party elects to have the charge decided in a civil action, a district court is authorized, upon a finding that a discriminatory housing practice has occurred, to grant relief as the court deems appropriate. Neb. Rev. Stat. § 20-342 (Reissue 1997).
If no election is made to file an action in district court, the NEOC provides an opportunity for an administrative hearing on the charge. A hearing officer conducts the hearing and makes findings of fact and conclusions of law which are reviewed and finalized by the Commission acting in a quasi-judicial capacity. Neb. Rev. Stat. §§ 20-337 and 20-378 (Reissue 1999). If there is a finding that a respondent has engaged or is about to engage in a discriminatory housing practice, the relief ordered may include actual damages, injunctive relief and substantial civil penalties up to $50,000 depending on the specific factual circumstances. Neb. Rev. Stat. § 20-337 (Reissue 1997).
In summary, the NEOC has the authority to conciliate complaints in an effort to reach an agreed upon settlement with both parties. In addition, at the election of an interested party, the NEOC provides an opportunity for an administrative hearing which results in an order entered by the NEOC acting in a quasi-judicial capacity.
With the foregoing in mind, your opinion request poses the following questions:
 1. "Is it appropriate that NEOC fines are based solely upon random negotiations?"
The NEOC does not "fine" respondents based on random negotiations. As stated above, pursuant to Neb. Rev. Stat. § 20-327 (Reissue 1997), the NEOC has the authority to conciliate complaints for violations of the Nebraska Fair Housing Act. Conciliation is the attempted resolution of issues raised by a complaint or by the investigation of a complaint through informal negotiations involving the aggrieved person, the respondent and the Commission. Neb. Rev. Stat. § 20-307 (Reissue 1997). Hence, the NEOC has a duty to attempt negotiations to resolve the complaint before parties may resort to the judicial or quasi-judicial litigation process. Negotiations are not random, but rather to the extent feasible, negotiations are statutorily required.
In addition, the NEOC, aggrieved parties and respondents alike, have an incentive to cooperate in the negotiation process. Depending on the merits of the investigation, a negotiated agreement may allow a party guilty of fair housing violations to avoid paying a greater amount which might be imposed in judicial or quasi-judicial proceedings. Moreover, the negotiation process allows parties to resolve their complaints thereby avoiding a lengthy litigation process.
 2. "Is it appropriate that fines negotiated by the NEOC are paid directly to organizations beyond the control of state government?"
To reiterate, the NEOC does not impose fines through negotiations. The NEOC negotiates a settlement between the complainant and respondent that may or may not include a monetary payment. A settlement agreement is subject to the general principles of contract law. Strategic Staff Management, Inc. v. Roseland, 260 Neb. 682, 619 N.W.2d 230 (2000); Woodmen of the World Life Ins. Soc. v. Kight, 246 Neb. 619, 522 N.W.2d 155
(1994). Interested parties have the right to determine the terms of their agreement.
The parties, by agreement, may designate the disbursement of settlement funds to anyone they choose whether it is an aggrieved party or an uninterested third party. Hence, any person, organization or business may receive monies or such other remedies as agreed to by the parties in the settlement agreement.
 3. "Should fine monies paid due to NEOC sanctions be received, accounted for and disbursed like all other monies of the state?"
If this question involves payments made as a result of settlement agreements negotiated between the parties as facilitated by the NEOC, such payments would go to the parties or other entities designated by the agreement, as stated above. If the parties to a complaint are unable to reach a settlement agreement, they may elect to have a hearing on the matter before a hearing officer or pursue the matter through district court. Neb. Rev. Stat. § 20-335 (Reissue 1997).
Regardless of the chosen forum for litigation, any civil penalties awarded by the NEOC or a district court are subject to Article VII, Section 5 of the Nebraska State Constitution. This section states:
 . . . All fines, penalties, and license money arising under the general laws of the state . . . shall belong and be paid over to the counties . . . [and] shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue . . .
Therefore, any penalties issued by the NEOC in its quasi-judicial capacity are received, accounted for and disbursed in the same manner as other penalties issued within the State of Nebraska.
Sincerely,
 JON BRUNING Attorney General
 Lynne R. Fritz Assistant Attorney General
Approved:
__________________________________ Attorney General
pc: Patrick J. O'Donnell, Clerk of the Legislature