IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

AMSDEN V. AMSDEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TRACY L. AMSDEN, APPELLANT,

V.

MICHAEL P. AMSDEN, APPELLEE.

Filed April 27, 2021.    No. A-20-648.

Appeal from the District Court for Merrick County: RACHEL A. DAUGHERTY, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Steffanie J. Garner Kotik for appellant.

Joseph D. Neuhaus and Gregory M. Neuhaus, of Neuhaus Law Offices, for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Tracy L. Amsden appeals from the order of the Merrick County District Court enforcing a settlement agreement in a child custody modification action. Pursuant to the agreement, Michael P. Amsden was awarded physical custody of the parties' two children. Tracy was awarded specified parenting time and was ordered to pay child support. We affirm the modification of physical custody and parenting time; however, we reverse the order of child support and remand that issue back to the district court for further proceedings.

## II. BACKGROUND

Tracy and Michael were divorced in March 2018. Pursuant to the parties' mediated parenting plan, the divorce decree granted the parties joint legal custody of their two children, born in 2004 and 2005, and Tracy was awarded physical custody of the children. The parties' "Regular

Time-Sharing" schedule was set forth in paragraph C of the parenting plan and provided the following weekend parenting time:

> 1st Weekend - [youngest child] with Dad
> 2nd Weekend - [oldest child] with Dad
> 3rd Weekend - Both boys with Dad
> 4th Weekend - Both boys with Mom

Beginning the 5th weekend, the sequence repeats[.]

Weekend parenting time was to begin after school on Friday, at approximately 4 p.m., and end on Sunday at 5 p.m. Michael was to have parenting time with both children every Wednesday from 4 p.m. until Thursday morning when school started, or 8 a.m. if there was no school. Additionally, Michael was to have 6 weeks of parenting time each summer "in no more than 2-week blocks at a time." A holiday parenting time schedule was also established. Michael was ordered to pay child support of $1,103 per month for the two children.

On July 17, 2019, Michael filed a complaint to modify the decree. He alleged a material change of circumstances had occurred since the entry of the decree, namely that Tracy had moved to Aurora, Nebraska, and had several incidents with the police at her home. Michael requested custody of the parties' children, subject to Tracy's reasonable right to parenting time. He alleged that the parties held mediation on July 15, but no agreement was reached.

The matter came on for trial on February 12, 2020. At that time, counsel for both parties confirmed that a stipulation had been reached. The district court asked that the stipulation be read into the record. Tracy's counsel complied, and the following occurred on the record.

> [Tracy's counsel]: Your Honor, essentially, Your Honor, what we're going to be doing is flip-flopping effective June 1st, the custody/visitation arrangement. The only change it will have then, kind of springing this on -- not springing it on [opposing counsel], . . . [Michael] was getting six weeks in the summer, . . . in two-week increments. My client [Tracy] wants the six straight weeks in the summer.
>
> THE COURT: Why don't you visit --
>
> [Tracy's counsel]: He brought it up.
>
> [Michael's counsel]: We're okay.
>
> [Tracy's counsel]: Other than that, it will be identical. [Opposing counsel] and I will put together the stipulation for filing for the order for the Court. But we're agreeing today that effective June 1st, it will -- that custody/visitation will flip-flop with that one change. Obviously, we'll put together a parenting plan reflecting that, and the necessary child support calculation that will be effective June 1st as well, because neither one of us have all the information necessary for the child support calculation at this point.
>
> THE COURT: All right, thank you. [Opposing counsel], do you agree with that recitation?
>
> [Michael's counsel]: I do, Your Honor. And if the Court would look at the parenting plan, paragraph C on page 2, and just flip that around as far as -- it's kind of an unusual one. The first weekend [youngest child] only with, it will say mom instead of dad. Except for the six weeks for the summer break then which will be straight. But yes, we agree with that stipulation.

THE COURT: Then [Tracy], you have heard the agreement?

[Tracy]: Yes.

THE COURT: And do you agree with this?

[Tracy]: Yeah, I suppose.

THE COURT: Okay. Do you understand or do you believe this to be in the best interest of your children?

[Tracy]: No, but yeah.

THE COURT: Okay. Sometimes it's difficult and I realize that.

[Tracy]: It's hard, really hard.

THE COURT: I appreciate that. [Michael], you've heard the agreement; is that correct?

[Michael]: Yes.

THE COURT: And you are in agreement with it?

[Michael]: Yes.

THE COURT: Do you believe it to be in the best interest of your children?

[Michael]: Yes.

THE COURT: Okay. I'm going to approve that agreement and I'm going to order it into effect. I'm going to order counsel to prepare an updated parenting plan changing that paragraph C on page 2 to reflect the new provision, to prepare a child support calculation and an order.

The court granted counsel 3 weeks to "submit the paperwork."

On March 3, 2020, Tracy's attorney filed a motion to withdraw, stating that "professional consideration require [sic] termination of the representation of the client."

On March 16, 2020, Michael filed a "Motion to Enforce Settlement Agreement," requesting that the district court enforce the stipulated agreement that was entered into by the parties on the record on February 12. An "Amended Parenting Plan" and child support worksheet were filed on March 23. The amended parenting plan was signed by Michael, but not Tracy.

On April 27, 2020, a hearing was held on both the motion to withdraw as counsel and the motion to enforce the settlement agreement. Tracy and her counsel each appeared telephonically. Michael did not appear, but he was represented by his counsel. The district court began with the motion to withdraw. The court asked Tracy if she had any objection to her counsel withdrawing, and she responded, "No"; the court granted counsel's motion to withdraw. The court then proceeded to the motion to enforce the settlement agreement, during which portion of the hearing Tracy was not represented by counsel. The court asked Michael's counsel if there was any evidence he wished to adduce. Counsel replied, "No." The court then noted that Tracy provided two items to the court that morning, and asked if she was offering those exhibits. Tracy replied, "Yes." When asked if he had any objections to the two exhibits, Michael's counsel stated, "I haven't seen them. I guess I would object to any hearsay or, you know, the normal things that we object to on affidavits and so forth. But other than that, I have no objection." The court received the two exhibits, but said it would not consider any information that was not otherwise allowable by the rules of evidence.

Exhibit 1 is a letter from Tracy to the district court dated March 17, 2020, but not signed until April 23. In that letter, Tracy stated that she "was under duress from [her] attorney . . . to go along with that agreement" and she did not believe it was in the best interest of her children. Tracy "felt very rushed and forced to go along with something that [she] did not agree with." She said, "All [my attorney] told me as to why I need to sign over custody to my ex-husband it [sic] is 'that is what the boys want' and 'we are giving Mike time to hang himself' (figuratively) and that the agreement can be amended in the future." Tracy believed it was in the children's best interests to remain living with her. She said that Michael was trying to alienate her from the children by "complaining or 'speaking derogatory'" about her to the children, and that he was inconsistent getting the children for parenting time and showing up for school functions.

Exhibit 2 is an undated and unsigned typed document giving the "reasons" why Tracy should maintain primary custody of the children. In the document, Tracy contends that she provides a "safe, clean, positive environment" for the children, she participates in their lives, and the children have adjusted since moving to Aurora. Tracy contends that even when the parties were married, Michael "chose not to participate most of the time." She also recounts how Michael "left them" "without any warning" and she appears to recount things that happened prior to their divorce or that occurred at some unspecified time. Tracy contends that Michael has mold in his home and a wood stove that "worries" her. She said that the children's clothes smelled "of stale cigarette smoke or just pain [sic] smelled bad" after parenting time with Michael, and that the children told her Michael complained about her to them.

The district court asked the parties if they wished to be heard. Michael's counsel recounted that the parties were present before the court in February 2020 and reached a stipulation with regard to custody and parenting time, that upon questioning by the court both parties agreed to the stipulation, and that the court ordered an amended parenting plan and child support calculation be prepared. Counsel stated that Michael signed the parenting plan and it was submitted without Tracy's signature because she refused to sign it. Counsel asked the court to enforce the amended parenting plan and child support calculation that was submitted.

Tracy argued that "the last time at court, [my attorney] just come up and told me to do this, and he knew that that was not what I believed was in the best interest of our children." Tracy claimed the amended parenting plan was "not going to work," because, "[f]or example," the amended parenting plan says she will have parenting time Wednesdays overnight, but "it's just not feasible" because she now lives in Aurora and Michael lives in Chapman, Nebraska. She believed the parties "need to sit down and really go over the parenting plan if we're going to try and do anything." She then stated, "I would like a little more time to find someone, another attorney to represent me before we go too far forward."

The district court recalled that a stipulation was entered, both parties were questioned, the court approved the stipulation and ordered its terms into effect. The court stated, "If things are not workable, Ms. Amsden, or if you feel there's been some sort of change, you are welcome to seek legal counsel to talk about how that change may be. But the Court has entered that as an order." After reviewing the parenting plan submitted by Michael, the court found it was in compliance with what it had ordered on February 12, 2020; the court approved it and ordered its provisions into effect.

Tracy again addressed the district court stating that her attorney had "rushed" her, that she "did not want to do this," and that her attorney "did not stand up for [her] that day." She asserted it was not in the best interest of the children because "there's a lot more going on here." Tracy asked for more time, stating, "I know somebody that can help me out." The court responded, "You can consult with an attorney if you wish, you always have that right to do [sic], so they can look at it and advise you from there. But this is the Court's order."

The district court asked Michael's counsel to "journalize," and it was decided that it would be a "Court Ordered Parenting Plan" rather than an "Agreed Parenting Plan." Tracy continued to go back and forth with the court, eventually stating, "Mike is abusing the boys and still me mentally and emotionally and --," but the court stopped her and told her "[t]hat is not the purpose of this hearing." The court told Tracy that she could contact authorities if she had concerns, but that "the purpose of this hearing has concluded."

In its journal entry dated April 28, 2020, the district court sustained Michael's motion to enforce the settlement agreement. The court entered a "Court-Ordered Parenting Plan," which was attached to the journal entry. The parenting plan awarded the parties joint legal custody of their two children, and awarded Michael physical custody of the children; parenting time was also established. Paragraph C of the parenting plan provided the following weekend parenting time:

> 1st Weekend - [youngest child] with Mom
> 2nd Weekend - [oldest child] with Mom
> 3rd Weekend - Both boys with Mom
> 4th Weekend - Both boys with Dad
> Beginning the 5th weekend, the sequence repeats[.]

Weekend parenting time was to begin after school on Friday, at approximately 4 p.m., and end on Sunday at 5 p.m. Tracy was to have parenting time with both children every Wednesday from 4 p.m. until Thursday morning when school starts, or 8 a.m. if there is no school. Additionally, Tracy was to have 6 weeks of parenting time each summer. A holiday parenting time schedule was also established. In its journal entry, the district court ordered Tracy to pay child support of $82 per month. The court stated that "[t]he effective date of this Journal Entry and Court-Ordered Parenting Plan shall be the date it is filed with the Court."

On May 6, 2020, Tracy, with new counsel, filed a "Motion to Alter or Amend Judgment and Motion for New Trial." She alleged the motion should be granted due to the following:

> 1. Irregularity in the proceedings of the court, jury, referee, or prevailing party or any order of the court or referee or abuse of discretion by which the party was prevented from having a fair trial;
> 2. Misconduct of the jury or prevailing party;
> 3. Accident or surprise, which ordinary prudence could not have guarded against;
> 4. The Order is not sustained by the evidence and is contrary to law; and
> 5. Newly discovered evidence, material for the party applying, which the moving party could not, with reasonable diligence, have discovered and produced at trial.

A hearing was held on June 24, 2020. At the hearing, Tracy's counsel asserted that between February 12 and April 27, "there were new items that were discovered" by Tracy and that she was

not interested in entering into that agreement, which was the reason Michael filed the motion to enforce. On April 27, Tracy's initial counsel was granted leave to withdraw and Tracy was not able to have counsel guide her as to how to proceed with Michael's motion. Tracy believed a new trial should be granted because the order was not supported by the law and the evidence, and the parenting plan was not feasible based on the distance between the parties. Michael's counsel argued that Tracy did not produce any evidence which would let the district court order a new trial. The court took the matter under advisement.

In an order entered on August 11, 2020, the district court found that at the June 24 hearing, Tracy "argued in essence that new information had been discovered making the Parenting Plan no longer feasible"; "[n]o evidence was presented, however, showing how the Parenting Plan was no longer workable." The court further found there was no evidence presented of any irregularity in the proceedings, misconduct of a prevailing party, accident or surprise. The court overruled Tracy's motion.

Tracy now appeals.

## III. ASSIGNMENTS OF ERROR

Tracy assigns, consolidated and reordered, that the district court erred in (1) allowing her counsel to withdraw and not allowing her time to find additional counsel to represent her prior to proceeding with the hearing on the motion to enforce the settlement agreement, and (2) sustaining the motion to enforce the settlement agreement and entering a modified parenting plan.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

## V. ANALYSIS

### 1. REPRESENTATION BY COUNSEL

Tracy claims the district court erred when it allowed her counsel to withdraw and then did not grant a short continuance to allow her time to seek a new attorney to represent her prior to proceeding with the hearing on the motion to enforce the settlement agreement.

Tracy's initial attorney filed a motion to withdraw on March 3, 2020, nearly 2 months prior to the hearing on April 27. At the April 27 hearing, the district court began with the motion to withdraw. The court asked Tracy if she had any objection to her counsel withdrawing, and she responded, "No." After the court granted counsel's motion to withdraw, the court then proceeded with the hearing on the motion to enforce the settlement agreement, which included Tracy offering and the court receiving the two exhibits described earlier. It was not until discussions on that motion that Tracy said she would like more time to find a new attorney. However, the court continued with the hearing, and then sustained Michael's motion to enforce the settlement agreement, and a court-ordered parenting plan was subsequently entered.

Generally, a motion for a continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001).

At the time of the hearing on April 27, 2020, counsel's motion to withdraw had been on file for nearly 2 months, Michael's motion to enforce the settlement agreement had been on file for nearly 1½ months, and the amended parenting plan and child support worksheet had been on file for more than 1 month. At no time prior to that April 27 hearing did Tracy seek to continue the hearing on the motion to enforce the settlement agreement. And at the April 27 hearing, she did not object to her attorney withdrawing, despite knowing Michael's motion to enforce the settlement agreement was to be heard at that time. Further, she was able to submit her exhibits to the court in support of her opposition to the motion, which the court did receive for consideration, other than any information that was not otherwise allowable by the rules of evidence.

Under the circumstances of this case, we cannot say the district court abused its discretion when it did not allow Tracy time to seek a new attorney to represent her prior to proceeding with the hearing on the motion to enforce the settlement agreement.

## 2. ENFORCEMENT OF SETTLEMENT AGREEMENT

At the outset we note that ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Tilson v. Tilson, supra*. Tracy claims that there was no evidence of a material change in circumstances in this case, nor was there evidence regarding the best interests of the children. However, we find that the parties' stipulation regarding a change in custody and parenting time constituted a material change in circumstances, and that the parties' confirmation to the court that the change in custody and parenting time was in the children's best interests negated the necessity of any further evidence regarding the same. Thus, we now consider whether the district court erred in sustaining Michael's motion to enforce the settlement agreement.

In a recent paternity and custody case, this court set forth the following law regarding settlement agreements.

A settlement agreement is subject to the general principles of contract law. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000). To have a settlement agreement, there must be a definite offer and an unconditional acceptance. *Id*. See, also, *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014) (to create contract, there must be both offer and acceptance; there must also be meeting of minds or binding mutual understanding between parties to contract). A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Linscott v. Shasteen, supra*. The determination of the parties' intent to make a contract is to be gathered from objective manifestations--the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Id.* A fundamental and indispensable basis of any enforceable agreement is that there be a meeting of the minds of the parties as to the essential terms and conditions of the proposed contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

An alleged oral compromise and settlement agreement not made in open court is unenforceable where it is in violation of the statute of frauds or in violation of a court rule

requiring all stipulations and agreements of counsel or parties to a suit to be in writing, signed by the parties or their attorneys. *In re Estate of Mithofer*, 243 Neb. 722, 502 N.W.2d 454 (1993), citing *Omaha Nat. Bank v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982). Conversely, *a settlement agreement made in open court on the record, agreed to by all of the parties to the litigation and approved by the court, is enforceable. In re Estate of Mithofer, supra.*

*Smith v. King*, 29 Neb. App. 152, 179-80, 953 N.W.2d 258, 278 (2020) (emphasis supplied).

(a) Custody and Parenting Time

In addition to the principles of law cited above, the rule that custody and parenting time of minor children shall be determined on the basis of their best interests clearly envisions an independent inquiry by the court. See *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978). See, also, *Kelly v. Kelly*, 29 Neb. App. 198, 952 N.W.2d 207 (2020). The duty to exercise this responsibility cannot be superseded or forestalled by any agreements or stipulations by the parties. *Lautenschlager v. Lautenschlager, supra.* See, also, *Kelly v. Kelly, supra*. It continues throughout the period of the minority of the child even without objections or requests on the part of the parents. *Lautenschlager v. Lautenschlager, supra.* Stipulations and agreements, when made, are subject to the approval of the court, which may be granted or denied according to the best interests of the child. *Id*. But if the court disapproves of a custody stipulation, it must give the parties an opportunity to present evidence relevant to a complete reexamination of the question of custody. *Cook v. Cook*, 26 Neb. App. 137, 918 N.W.2d 1 (2018).

In this case, on February 12, 2020, there was a settlement agreement made in open court on the record, agreed to by all of the parties to the litigation, and approved by the district court. The stipulated agreement read into the record was that the parties were going to "flip-flop" the custody and parenting time agreement from the original divorce decree, with the only change being that Tracy would get 6 consecutive weeks of parenting time each summer, rather than the 2-week blocks of parenting time that Michael previously had. The court asked Tracy and Michael if that was their understanding of the agreement and whether they believed it was in the children's best interests. Despite Tracy's claims to the contrary in her brief on appeal, she did in fact confirm, on the record, her understanding of the agreement and her belief that it was in the children's best interests. In making that agreement, she acknowledged the decision was "hard, really hard." Michael likewise confirmed his understanding of the agreement and his belief that it was in the children's best interests. The court said it would "approve that agreement" and "order it into effect." The court ordered counsel to prepare an updated parenting plan and granted counsel 3 weeks to "submit the paperwork." Based on these facts, the parties' settlement agreement was enforceable. See *Smith v. King, supra*. Furthermore, the court, by approving the parties' stipulated agreement and orally ordering it into effect, implicitly determined that the agreement was in the children's best interests.

However, following the February 12, 2020, court proceeding, Tracy did not sign off on the written settlement agreement, and Michael filed a motion to enforce the settlement agreement. Because a final written order approving the settlement agreement and modifying custody had not yet been entered at the time of the April 27 hearing, the district court could have used its equitable

- 8 -

powers to consider any change in the parties' circumstances that had occurred since the February 12 proceeding in deciding whether or not to set aside the parties' earlier agreement. See *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988) (jurisdiction over divorces and child support orders within equity powers of district court). And "[w]here a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation." *Yori v. Helms*, 307 Neb. 375, 387, 949 N.W.2d 325, 336 (2020). See, also, *Bowmaker v. Rollman*, 29 Neb. App. 742, ___ N.W.2d ___ (2021) (after court's initial approval of parties' agreement and while case still pending, it remained in court's equitable power to consider unexpected financial circumstances when deciding whether or not to set aside parties' earlier agreement). In this case, Tracy did not present any evidence of a change in the parties' circumstances that had occurred since February 12.

At the hearing on April 27, 2020, Tracy claimed that she was "under duress" and pressured by her attorney to go along with the agreement even though she did not believe it was in her children's best interests. However, she made no mention of this allegation to the district court on February 12. To the contrary, at that time as previously noted, she confirmed her belief that the agreement was in her children's best interests, while also expressing that the decision was "hard, really hard." By acknowledging the difficulty of the decision, it is evident Tracy was aware of the seriousness of her agreement, but still agreed it was in the children's best interests. Exhibits 1 and 2 were received into evidence at the April 27 hearing. Exhibit 1, dated March 17, but signed April 23, was Tracy's letter to the court, in which she claimed she was "under duress" from her attorney to "go along with that agreement." That letter provided a few examples of incidents which took place after the parties' February stipulated agreement. It alleged that on March 10, Michael failed to show up at their son's play at school. On March 19, Michael failed to pick up a son in the morning as planned and did not show up until later in the evening. On March 27, it was one son's "turn to go to his dad but his dad can [sic] come get him because he didn't have enough money for gas." None of these alleged incidents support a change in the parties' circumstances justifying setting aside their earlier agreement, which both parties agreed was in the children's best interests. Exhibit 2 was an undated and unsigned typed document giving the "reasons" why Tracy should maintain primary custody of the children; nothing set forth in this document is shown to have occurred since February 12.

Tracy made additional arguments to the district court at the hearing on April 27, 2020, including her argument that the amended parenting plan was "not going to work" because, for example, the Wednesday overnight parenting time was "not feasible" given the distance between the parties' homes; again, there is nothing to show that her allegations were the result of a change in the parties' circumstances that occurred since February 12. Finally, at the June 24 hearing on Tracy's motion for new trial, she asserted that between February 12 and April 27, "there were new items that were discovered" and that she was not interested in entering into the settlement agreement; however she did not elaborate as to what "new items" were "discovered." Having reviewed the record and finding no showing of a change in the parties' circumstances since February 12 when Tracy agreed to the change in custody and parenting time, we find no abuse of discretion in the district court's enforcement of the settlement agreement regarding the same. Accordingly, we affirm the modification of physical custody and parenting time.

## (b) Child Support

Tracy argues, "There is absolutely no evidence there was any agreement as to the child support amounts in this matter. There is no offers [sic] to this court to find that the numbers used in the calculation are the earnings of the parties or how the numbers were arrived at." Brief for appellant at 17. We agree.

At the hearing on February 12, 2020, when the stipulation was read into the record, counsel stated, "Obviously, we'll put together a parenting plan reflecting [the change in custody and parenting time], and the necessary child support calculation that will be effective June 1st as well, because neither one of us have all the information necessary for the child support calculation at this point." The district court ordered counsel to prepare a child support calculation and an order, and counsel was granted 3 weeks to "submit the paperwork." The amended parenting plan and child support worksheet were filed on March 23; the plan was signed by Michael, but not Tracy. The child support amount appearing on that worksheet was what the court ultimately ordered Tracy to pay after the April 27 hearing on the motion to enforce the settlement agreement.

Unlike the issues regarding custody and parenting time, we find there was not a stipulation or agreement regarding child support. At the hearing on February 12, 2020, the parties stated that they did not have the necessary information for the child support calculation. The parties were to submit a calculation within 3 weeks, but there is no indication in our record that Tracy signed off on the child support worksheet filed on March 23, which appears to be the basis for the district court's order that she pay $82 per month in child support. We also note that the income information used in the child support worksheet filed on March 23 differs from the income(s) used in the child support worksheet from the original divorce decree in 2018. And there is no stipulation, agreement, or other evidence anywhere in our record to establish the parties' incomes at the time of the modification. Accordingly, the district court's order that Tracy pay $82 per month in child support was an abuse of discretion. We therefore reverse the order of child support and remand that issue back to the district court for further proceedings so that the court may calculate the child support obligation upon proper evidence or agreement of the parties.

Finally, we note that Tracy points out that the district court's April 28, 2020, journal entry did not address uncovered medical expenses. She argues that if it reverts back to the original decree, she would be required to pay the first $480 per year of uncovered medical, but "this would frankly be against the child support guidelines and non-sensical." Brief for appellant at 18. Since we are remanding for consideration of evidence pertinent to the calculation of child support, this issue should also be taken up by the district court at that time.

## VI. CONCLUSION

For the reasons stated above, we affirm the modification of physical custody and parenting time. However, we reverse the order of child support and remand that issue back to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.