IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MONTGOMERY V. CITY OF OMAHA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SANDRA MONTGOMERY, APPELLANT,

V.

THE CITY OF OMAHA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA,
AND DR. FRANKLIN T. THOMPSON, IN HIS OFFICIAL CAPACITY
AS DIRECTOR AND INDIVIDUALLY, APPELLEES.

Filed December 10, 2024.    No. A-24-012.

Appeal from the District Court for Douglas County: TODD O. ENGLEMAN, Judge. Affirmed.

Sandra Montgomery, pro se.

Ryan J. Wiesen, Deputy Omaha City Attorney, for appellees.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Sandra Montgomery filed a complaint against the City of Omaha and Franklin T. Thompson individually and in his official capacity as director of the City's Human Rights and Relations Department (collectively, the City). Montgomery alleged that she experienced discrimination in the workplace due to her sex, age, and race. The parties engaged in settlement discussions and ultimately reached a settlement agreement. Montgomery subsequently filed a motion to dismiss her lawsuit, which was granted by the district court. Approximately 5 months later, Montgomery filed a motion to vacate the dismissal order and rescind the settlement agreement. After a hearing, the district court denied her motion. On appeal, Montgomery argues that the district court erred in failing to find that the agreement lacked consideration and that she was coerced into the agreement. For the reasons that follow, we affirm.

- 1 -

BACKGROUND

In 2021, Montgomery was employed by the City as a senior civil rights investigator. On October 15, 2021, Montgomery, represented by counsel, filed a complaint against the City in the district court for Douglas County. Montgomery alleged sex, age, and race-based discrimination as well as retaliation for raising these complaints with her superiors. The parties engaged in settlement discussions and eventually came to an agreement. They signed a written settlement agreement on December 1, 2022.

As part of the agreement, Montgomery received a cash payment of $16,058.81, a separate cash payment of $3,000 representing the American Rescue Plan Act (ARPA) premium pay Montgomery would have received had she been working in person during settlement discussions, additional gross wages consisting of the difference between wages she received after being demoted and the wages she would have received had the demotion not occurred, full payment of $15,941.19 for the attorney fees she incurred, annual leave and sick leave accrual payouts, removal of a letter of demotion from her personnel file, the abeyance of a 5-day suspension previously imposed by the City, and, if requested, a neutral employment recommendation by the City. Montgomery was also permitted to work for the City until April 5, 2023. From April 5 to December 23, 2023, it was agreed that Montgomery would be placed on administrative leave with full pay and benefits. Effective December 23, Montgomery agreed to either retire or resign. At that time, she would be entitled to pension benefits. In return, Montgomery released and discharged the City and its employees from all claims and causes of action arising from her employment with the City.

The agreement states that both Montgomery and the City relied on the legal advice of their attorneys, that the entire agreement had been explained to each party, and that the terms were fully understood and voluntarily accepted. The agreement also states that Montgomery executed the agreement voluntarily and of her free will without coercion or duress. Her signature appears on the bottom of the document, as does the signature of the attorney who represented her in the district court.

As a result of the settlement, Montgomery filed a motion to dismiss her complaint with prejudice. On December 23, 2022, the court granted her motion. On May 9, 2023, Montgomery, representing herself, filed a motion to rescind the agreement and reinstate the case. She alleged that the settlement agreement was invalid and unenforceable because it did not contain any consideration and because the City used deceptive tactics to influence her decision to enter the agreement.

A hearing on Montgomery's motion, which the court identified as a motion to vacate, was held on December 18, 2023. Montgomery offered 26 exhibits in support of her motion, but only 5 were received as evidence. The City objected to the majority of Montgomery's exhibits based on relevance, and those objections were sustained. The exhibits that were received included: a copy of the settlement agreement, §§ 23-80 and 23-81 of the Omaha municipal code, a copy of her motion to vacate, a copy of the notice of hearing for her motion, and an email chain between Montgomery and her former attorney occurring after Montgomery accepted the City's terms for settlement but before she signed the written agreement.

In the email chain between Montgomery and her former attorney, dated November 17, 2022, Montgomery admits that she previously agreed to the City's offer, but has since changed her

mind and now wants to pursue her original lawsuit. In response, Montgomery's attorney stated that the negotiations with the City were conducted with Montgomery's authorization. The attorney also stated that she represented to the City only what Montgomery authorized her to represent and accepted the City's offer with Montgomery's permission. The attorney informed Montgomery that while they could attempt to secure changes that would be immaterial to the agreement's terms, the attorney could not renege on Montgomery's acceptance of the City's offer. Montgomery's attorney strongly encouraged Montgomery to reconsider her position, as the attorney advised that the agreement was reasonable and favorable to Montgomery. The attorney also informed Montgomery that if she decided to renege, the attorney would have to withdraw as her counsel.

The parties made oral arguments to the court. Montgomery began by arguing the merits of her discrimination claims. After some time, the court interrupted Montgomery and informed her that the hearing was not an opportunity for her to try her case. The court stated that she needed to explain why the agreement should be set aside and the case should be reinstated.

In response, Montgomery asserted that her former attorney failed to act responsibly and violated the rules of professional conduct while representing her. Specifically, Montgomery asserted that her former attorney failed to act on Montgomery's desire to withdraw from the agreement. Montgomery also argued that she was under duress when her attorney "threatened to quit representing [Montgomery] if [Montgomery] did not sign the agreement." Montgomery alleged that her former attorney forced Montgomery to sign the agreement because her attorney wanted the attorney fees payment. Additionally, Montgomery alleged that the City "did not operate with clean hands," "caused duress," and suspended her in retaliation for her complaints and lawsuit. She described the agreement as "one-sided" and stated that there was "nothing in th[e] agreement" for her.

In response, the City argued that Montgomery failed to present any evidence that would permit the court to vacate the judgment of dismissal and set aside the settlement agreement. The City first argued that the settlement agreement had "substantial consideration" for Montgomery, including several cash payments, removal of a letter of demotion, dismissal of a 5-day suspension, a neutral employment recommendation, and payment of her attorney fees.

The City also argued that Montgomery's claims against her former attorney were unsupported by the evidence. Based on the email chain, the City reasoned that Montgomery's prior attorney soundly represented and advised Montgomery. The City asserted that the attorney advised Montgomery of the benefits of honoring the agreement, which the attorney deemed favorable to Montgomery, and the ramifications of reneging on said agreement. The City argued that having considered the sound legal advice of her counsel, Montgomery made the decision, free of fraud or duress, to sign the agreement.

Following argument and submission of the issue, the court stated that Montgomery's allegations concerned events that occurred prior to her decision to enter into the agreement. The court stated that Montgomery had an attorney when she considered the agreement and ultimately decided to enter into the agreement. The court found that she was not deprived of any due process rights and that she freely and voluntarily made the decision to enter the agreement, which is exemplified by her signature on the written agreement. Thus, the court denied her motion to vacate. An order reflecting the court's oral findings was filed on January 3, 2024. Montgomery appeals.

ASSIGNMENTS OF ERROR

Montgomery represents herself on appeal. She assigns, renumbered and restated, that the district court erred in (1) neglecting to acknowledge the absence of consideration in the agreement; (2) failing to consider the coercive tactics, duress, and fraudulent inducement employed by the City to procure the agreement; (3) overlooking violations of Title VII of the Civil Rights Act of 1964; and (4) failing to consider violations of the U.S. Constitution.

STANDARD OF REVIEW

An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

ANALYSIS

Montgomery generally contends that the district court erred in denying her motion to vacate the dismissal order and rescind the settlement agreement. After reviewing the record, we conclude that the district court did not abuse its discretion in denying her motion.

Montgomery first argues that the agreement lacked consideration. A settlement agreement is subject to the general principles of contract law. *Strategic Staff Mgmt. v. Roseland*, 260 Neb. 682, 619 N.W.2d 230 (2000). Consideration is an essential element to the validity of a contract. See *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014). A lack of consideration means no contract is ever formed because no consideration exists or none was intended to pass. *Lindsay Internat. Sales & Serv. v. Wegener*, 301 Neb. 1, 917 N.W.2d 133 (2018). Consideration is sufficient to support a contract if there is any detriment to the promisee or any benefit to the promisor. *Heineman v. Evangelical Luth. Good Sam. Soc.*, 300 Neb. 187, 912 N.W.2d 751 (2018).

After reviewing the record, we conclude that the settlement agreement did not lack consideration. In fact, the agreement included substantial consideration including several cash payments, attorney fees, removal of a letter of demotion from her personnel file, the abeyance of a 5-day suspension, and a neutral recommendation from the City if requested. Montgomery was also provided additional salary making up the loss in pay she incurred due to her prior demotion. She also was provided a significant period of paid administrative leave leading up to a retirement date and eligibility for a pension.

Montgomery does not address these terms or explain how they fail to collectively establish sufficient consideration. Instead, she argues that she was entitled to additional benefits. This argument is without evidentiary support. The fact that Montgomery desires additional consideration does not negate the consideration that already existed at the time she entered the agreement. This assignment of error fails.

Montgomery also argues that the City used coercive tactics, duress, and fraudulent inducement to procure the agreement. There is no evidence to support this contention in the record. In fact, the evidence supports the opposite conclusion. The agreement explicitly states that Montgomery executed the agreement voluntarily and of her free will without coercion or duress. Her signature appears at the bottom of the agreement, indicating her endorsement of this statement.

Further, the email chain between Montgomery and her former attorney indicates that Montgomery had the benefit of counsel during negotiations and received sound legal advice before deciding to enter the agreement. This assignment of error also fails.

Montgomery's two remaining assignments of error concerning Title VII violations and federal constitutional violations are not properly before us. These arguments concern the underlying discrimination claims asserted by Montgomery in her complaint. They were not considered by the district court when it ruled on Montgomery's motion to vacate. When Montgomery attempted to present these arguments at the hearing, the court informed her that the hearing was not an opportunity to try the merits of her case and sustained the City's objections to Montgomery's exhibits relating to the allegations made in the original complaint. The court properly refused to consider these issues because they were not germane to her motion to vacate, which concerned the issue of whether the order dismissing the case with prejudice should be set aside. Although alleged violations of Title VII and the federal constitution during Montgomery's employment would have been relevant at trial, they were not relevant to the issues raised in Montgomery's motion to vacate.

The law favors and encourages settlements, and in the absence of fraud, error, or mistake, they should not be set aside. *Peckham v. Deans*, 186 Neb. 190, 181 N.W.2d 851 (1970). Montgomery did not present any evidence of fraud, error, or mistake. Therefore, we find that the district court did not abuse its discretion in denying her motion to vacate.

## CONCLUSION

We affirm the order of the district court denying Montgomery's motion to vacate the order of dismissal.

AFFIRMED.